2023 IL App (1st) 232147

SECOND DIVISION
December 19, 2023

No. 1-23-2147B

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| | ) | |
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | Case No. 23200012701 |
| | ) | |
| JUDAH BARNER, | ) | Honorable |
| | ) | Anthony Calabrese, |
| Defendant-Appellant. | ) | Judge Presiding |
| | ) | |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Judah Barner was arrested for criminal damage to government-supported property, a Class D felony. He was released on a D-bond of $15,000 after depositing the requisite ten percent. After the Pretrial Fairness Act took effect, defendant missed a Zoom court appearance. The court issued a warrant for defendant, who was arrested and brought to court. The State moved to revoke his bond. The court granted that motion, ordering that defendant be detained "[t]ill the case is over."

¶ 2    That was error. The Pretrial Fairness Act does not permit revocation of pretrial release for the mere failure to appear; only the commission of a felony or Class A misdemeanor (or the violation of an order of protection) while on pretrial release will warrant a revocation of pretrial

release. The court does have the authority to issue a *sanction* for the mere failure to appear, including incarceration for up to 30 days. But the court did not hold a sanctions hearing and, in any event, by the time this appeal reached this court, more than 30 days had passed, and defendant remained in detention. We reverse the court's judgment.

¶ 3                                   BACKGROUND

¶ 4     On August 11, 2023, defendant was charged with criminal damage to government-supported property in an amount less than $500, a Class 4 felony. See 720 ILCS 5/21-1.01(a)(1) (West 2022). The next day, defendant was given a D-bond of $15,000, which he posted on August 28, 2023. He later appeared in court on the matter in person on August 29 and via Zoom video conferencing on September 12.

¶ 5     All of this occurred before the sweeping reform of our pretrial-release system by the Pretrial Fairness Act (PFA). See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4; see generally 725 ILCS 5/110-2(a) (West 2022). The PFA took effect on September 18, 2023, after our supreme court lifted its stay. See *Rowe*, 2023 IL 129248, ¶ 52.

¶ 6     Ten days after the PFA took effect, on September 28, 2023, defendant failed to appear by Zoom at a hearing on this matter. The court issued an arrest warrant with a notification date of October 26. Defendant did not appear in court by October 26. The next day, he was arrested on the warrant.

¶ 7     On October 31, 2023, the State filed a petition for revocation under the PFA, not because defendant had committed any additional offenses while released but simply claiming that "no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings."

¶ 8     Defendant's counsel questioned how the State could seek to file a petition to revoke for

this violation under the new law. The State clarified that it was because defendant "didn't show up to court," and the court agreed that defendant allegedly failed to appear in court "as required under the conditions of bond. So they do have a right then to proceed to revoke his current bond based on his failure to appear." Counsel renewed his objection, but the court said it believed it could detain defendant, even on a "non-detainable" charge, if he failed to "follow the requirements of pretrial release."

¶ 9 The parties proceeded by way of proffer. The State recited the facts that led to defendant's initial charge, and the court took judicial notice that defendant was supposed to be in court on September 28 but did not appear. Defendant was given a notice to appear on or before October 26, with a warning that a warrant would be issued if he did not, and he was arrested soon thereafter.

¶ 10 Counsel for defendant told the court that defendant did not appear in court via Zoom on September 28 because "his computer was not working." Counsel also said that defendant did not receive notice from the clerk of the summons to appear or that a warrant would be issued if defendant did not appear before October 26. Counsel also pointed out that defendant had appeared at previous court hearings, and there was no record that defendant had missed a court date previously.

¶ 11 The court concluded that "it's clear that [defendant] is not likely to appear in this case" and that no condition or set of conditions would ensure defendant's appearance. It ordered the defendant detained. When counsel asked the court for how long it would detain defendant, the court responded, "Till the case is over." Counsel replied, "No, that's not the law," to which the court responded, "All right. Take it up. Take it up on appeal." Defendant was taken into custody.

¶ 12 Defendant filed a notice of appeal. On November 29, he filed a memorandum in this

court. In that memorandum, he argued that the State improperly filed a petition to revoke, the court did not follow the applicable procedures regarding a failure-to-appear violation, and even if the court's actions could be construed as imposing a sanction on defendant, he had already served the maximum sanction allowed for failing to appear—30 days in jail. See 725 ILCS 5/110-6(a), (c), (e), (f) (West 2022).

¶ 13    After reviewing defendant's memorandum, we sensed the strong likelihood that defendant was being held without legal authority, for the reasons given by defendant: (1) the court lacked the authority to revoke defendant's pretrial release for the mere failure to appear and (2) even if it could be argued that the court was holding a *sanctions* hearing, not a revocation hearing, any sanction was limited to 30 days' detention, and those 30 days had already passed.

¶ 14    Recognizing that the State's memorandum was not due until December 28, which would leave defendant in detention over the holidays and long past any legal authority to detain him (if any existed in the first place), we asked for a prompt response from the State. We did not ask the State to submit a memorandum immediately, but we did order the State to answer one question within a week: whether defendant should be immediately released from detention.

¶ 15    To its great credit, the State answered us the next *day*: "the People are of the opinion that defendant Judah Barner should be immediately released." We thus entered an order that same day releasing defendant from custody immediately, with all previous conditions of bond to remain in effect.

¶ 16                                    ANALYSIS

¶ 17    Though we released defendant immediately upon the State's concession, we did not issue a final judgment in this appeal. We do so now. Rather than merely dismissing the matter, we choose to explain our reasoning. The courts are operating under a relatively new system, and we

should take every opportunity to provide guidance to the trial courts at this early stage.

¶ 18    Defendant's failure to appear occurred on September 28, 2023, after the amended statutory scheme had taken effect. So any action that could be taken against defendant for violating the terms of his bond was governed by the new laws, not the old; the court was required to comply with section 110-6 of the Code of Criminal Procedure. See 725 ILCS 5/110-7.5(c)(5) (West 2022) ("If there is an alleged violation of the conditions of pretrial release in a matter in which the defendant has previously deposited security, the court having jurisdiction shall follow the procedures for revocation of pretrial release or sanctions set forth in Section 110-6.").

¶ 19    Under section 110-6, however, the court may revoke a defendant's pretrial release "only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release ***." *Id*. § 110-6(a). (One other instance, not applicable here, is if a defendant violates an order of protection; see *id*.)

¶ 20    In other words, the court may *not* revoke a defendant's pretrial release merely for failing to appear in court. So here, when the State moved for revocation of defendant's pretrial release not because he committed a felony or Class A misdemeanor during pretrial release but because he missed a court appearance, the State asked the court to do something it was legally powerless to do.

¶ 21    Though the State may not seek *revocation* for a defendant's failure to appear in court, the State may seek, and the court may enter, *sanctions* against a defendant for failure to appear. *Id*. § 110-6 (c), (d). So if a defendant, as here, allegedly fails to appear in court as required by the conditions of his release, the court may issue a summons or a warrant for the defendant's arrest to have him brought to court for a hearing on sanctions. *Id*. § 110-6(c)(1) (court must follow procedures in section 110-3 to ensure defendant's appearance in court if defendant fails to appear

as required by conditions of defendant's release); *id*. § 110-3 (court may issue summons or warrant for arrest of defendant for failure to comply with condition of pretrial release).

¶ 22    Once a defendant appears in court either via summons or warrant for his arrest, the State may file a verified petition requesting sanctions. *Id*. § 110-6(d). At that hearing, the State must prove, by clear and convincing evidence, that (1) the defendant committed an act that violated the terms of his pretrial release; (2) the defendant had actual knowledge that his actions would violate a court order; (3) the violation of that order was willful; and (4) the violation was not caused by a lack of access to financial monetary resources. *Id*. § 110-6(e).

¶ 23    If the court finds that the State has satisfied its burden of proof, the sanctions the court may impose include (1) a verbal or written admonishment; (2) imprisonment in the county jail for no more than 30 days; or (3) a modification of pretrial release conditions. *Id*. § 110-6(f).

¶ 24    So even were we to construe the court's actions here as a hearing on sanctions, the court could not have detained him for more than 30 days as a sanction, and defendant was detained for longer than that period of time. But it is clear that the court did not conduct a hearing on sanctions. The court was presented with a motion for revocation of pretrial release. And the court granted it, ordering defendant detained "[t]ill the case is over." As the court had no legal authority to revoke defendant's pretrial release, we reverse that judgment.

¶ 25    As noted in our order discharging defendant from custody, defendant remains on pretrial release with the previous conditions of bond.

¶ 26                                    CONCLUSION

¶ 27    The judgment of the circuit court is reversed.

¶ 28    Reversed.

---

### *The People of the State of Illinois v. Judah Barner*,
**2023 IL App (1st) 232147**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23200012701; the Hon. Anthony Calabrese, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell, Jr., Public Defender (Rebecca Cohen, Assistant Public Defender, of counsel), of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney (Enrique Abraham, Assistant State's Attorney, of counsel), of Chicago, for appellee. |

---