NOTICE
Decision filed 09/05/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240745

NO. 5-24-0745

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 23-CF-294 |
| | ) | |
| JAMES C. FARRIS, | ) | Honorable |
| | ) | Brian L. Bower, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court, with opinion.
Presiding Justice Vaughan and Justice Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, James C. Farris, appeals the May 20, 2024, order of the circuit court of Coles County, granting the State's second petition to deny pretrial release and ordering him detained pending trial. The defendant filed a motion for relief on June 5, 2024, and the circuit court denied the defendant's motion on June 13, 2024. On appeal, the defendant argues that the circuit court erred in ordering him detained since the State lacked a statutory basis to file a second petition to deny pretrial release or, in the alternative, the State failed to prove that the defendant posed an unmitigable safety threat. For the following reasons, we reverse the circuit court's detention order of May 20, 2024.

1

¶ 2                                    I. BACKGROUND

¶ 3      On June 12, 2023, the defendant was charged with one count of aggravated battery (720 ILCS 5/12-3.05(e)(1), (h) (West 2022)), a Class X felony; one count of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a), (e)), a Class 3 felony; and one count of obstructing justice (*id.* § 31-4(a)(1), (b)(1)), a Class 4 felony. On the same day, the circuit court set the defendant's bond at $300,000, requiring a deposit of 10%, along with a no-contact order. The defendant did not post bond and remained in pretrial detention.

¶ 4      The State filed a petition to deny pretrial release on September 18, 2023. The circuit court held a hearing on the State's motion on September 19, 2023, and ordered the defendant detained. The defendant timely appealed the circuit court's detention order (appeal No. 5-23-0697). On October 6, 2023, at a subsequent hearing, the circuit court conducted a detention review and found that continued detention was necessary. The defendant appealed the circuit court's October 6, 2023, continued detention determination (appeal No. 5-23-0872). On October 17, 2023, the defendant filed an unopposed motion to dismiss appeal No. 5-23-0697 as moot, based on the defendant's subsequent appeal. This court granted the defendant's motion and dismissed appeal No. 5-23-0697 on October 18, 2023.

¶ 5      On October 27, 2023, the circuit court again conducted a review of the defendant's detention and determined that the defendant could be released on electronic home confinement, but stayed its decision until the defendant could meet with pretrial services. On October 30, 2023, the circuit court ordered the defendant released to home confinement upon being fitted with a global positioning system (GPS) home monitoring unit, along with the previous conditions of release that included a no-contact order. On November 3, 2023, the circuit court entered a pretrial release order pursuant to section 22 of the Pretrial Services Act (725 ILCS 185/22 (West 2022)).

The defendant filed an unopposed motion to dismiss appeal No. 5-23-0872, as moot, based on the defendant's release. This court granted the defendant's motion on November 7, 2023, and dismissed appeal No. 5-23-0872.

¶ 6    The defendant's pretrial release conditions were modified by the circuit court on December 4, 2023, to allow the defendant movement to and from medical appointments. The circuit court again modified the defendant's release conditions on February 5, 2024, to allow the defendant to visit his mother two times a week for one hour per visit. The defendant also made several movement requests for work-related purposes to the electronic monitoring unit (EM unit), which were granted. The defendant complied with informing the EM unit of the addresses where he was working; however, during these approved movements, the defendant was reported as having numerous unapproved stops at residential addresses and food and business establishments.

¶ 7    On May 13, 2024, the State filed a verified motion to revoke pretrial release and/or for sanctions. The State's motion alleged that the defendant had repeatedly violated his electronic monitoring restrictions and that the defendant had continued a pattern of criminal behavior that had not been mitigated or controlled by the prior conditions of pretrial release. As such, the State requested revocation of the defendant's pretrial release and detention of the defendant pending trial.

¶ 8    The circuit court conducted a hearing on the State's motion on May 15, 2024. At the beginning of the hearing, the circuit court asked the State to provide the statutory basis for the revocation of pretrial release. The State responded with "725 ILCS 110-6," then stated, "Specifically, 5/110-6(c)(4)." See 725 ILCS 5/110-6(c)(4) (West 2022). The defendant, however, argued that section 110-6(a) (*id.* § 110-6(a)) plainly states that pretrial release can only be revoked for the alleged commission of a new offense that is a Class A misdemeanor or greater. The

defendant argued that the State's motion alleged that the defendant had "engaged in a pattern of criminal behavior" but not that the defendant had committed any new offense while on pretrial release.

¶ 9 The circuit court stated that it had reviewed the case law presented by the defendant along with the statutory regulations. The circuit court then stated as follows:

"The Court would note Section 110-6(a)(1) [*sic*] [(see 725 ILCS 5/110-6(a) (West 2022))]: 'When a Defendant is granted pretrial release under this section,' which [the defendant] has been done, 'the pretrial release may be revoked only under the following conditions: One, if the Defendant is charged with a detainable offense,' which the Defendant was, 'a Defendant may be detained after the State files a verified petition for such hearing and gives the notice—the Defendant notice as prescribed.'

* * *

*** Okay. This Court is going to find that pursuant to 110-6(a)(1) [*sic*], that there is a basis for revocation—

(Pause.)

***—based upon a hearing consistent with 110-6(1) [*sic*]."

¶ 10 By way of proffer, the State requested that the circuit court take judicial notice of the pretrial progress reports that demonstrated the defendant's unauthorized stops while on electronic monitoring. Over the defendant's objection, the circuit court indicated that it would take judicial notice of the reports. The defense then called the defendant to testify on his own behalf. The defendant testified that he had complied with his electronic monitoring. According to the defendant, he spoke with the EM unit every day regarding his work schedule and was told that

when he needed to stop to urinate due to a medical condition, he did not need to call for approval. According to the defendant's testimony, the EM unit said the same with regard to getting gas or something to eat. The defendant stated that he documented his daily calls with the EM unit and that there have been times when the EM unit has not answered his calls or called him back when he was attempting to get approval for a stop. On cross-examination, the defendant stated that the numerous alleged violations with regard to the residential address was his employer's address, which he had permission to be at, and that the other violations were places where the EM unit stated that he did not need to call for permission.

¶ 11 The State called Priscilla McKinney, a pretrial service officer, who stated that she had overseen the defendant's monitoring since October 30, 2023. McKinney stated that she had received the reports of the unauthorized stops from the electronic monitoring division and that the defendant had approximately 96 unauthorized stops since March 2024. According to McKinney's testimony, 11 of those stops were made at a drive-thru or a gas station, with the normal amount of time that would generally take someone to get through a drive-thru or to stop for gas. McKinney also testified that she could not confirm or deny whether the defendant called the EM unit every day, but that she had personally informed the defendant that any stops prior to getting approval would be a violation of his conditions of electronic monitoring. McKinney further testified that, to her knowledge, the defendant had not committed any new offenses since being placed on electronic monitoring.

¶ 12 After arguments, the circuit court stated as follows:

"This Court now finds that based upon the violations of the Electronic Home Monitoring Agreement as set forth, that that safeguard or condition serves no purpose for the mitigation of any additional felonies or misdemeanors by [the

5

defendant] or the protection of the public. The Court, after reviewing the sworn officer's report, the original petition for detention, the evidence presented at the suppression hearing, which the Court incorporated by agreement into the Electronic Home Monitoring Agreement review in October, the Court finds that no set of conditions satisfy or provide the protections authorized by the Court, finds those by clear and convincing evidence, and orders the detention of [the defendant]."

¶ 13 On May 16, 2024, the defendant filed a motion for relief. The motion for relief stated that the State had referenced a version of the statute that was no longer in effect and argued that the revocation of pretrial release was only authorized upon the alleged commission of a new offense that is a Class A misdemeanor or greater. The motion for relief stated that there was no evidence presented at the hearing that the defendant had committed any offense while on pretrial release. The motion for relief argued that the circuit court erred in overruling the defendant's objection regarding the circuit court taking judicial notice of the pretrial progress reports, as no foundation was laid for their admission, and further argued that the circuit court erred in allowing the State to proceed by proffer, as no provision of section 110-6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6 (West 2022)) allows the introduction of proffered evidence. Finally, the defendant's motion alleged that the State did not prove, by clear and convincing evidence, that

"(1) the Defendant committed an act that violated a term of his release, and (2) he had actual knowledge that his action would violate a court order, and (3) that the violation was willful, and (4) that the violation was not caused by a lack of access to financial resources."

¶ 14 The circuit court conducted a hearing on the defendant's motion for relief on May 17, 2024. At the hearing, the State argued that it had proven "a violation of pretrial conditions, bail bond,

6

which used to be violation of bail bond, which is a Class A misdemeanor." The State acknowledged that it had relied upon an older version of the statute and further argued as follows:

"Judge, the argument that this should be a sanctions hearing, I disagree with. I don't have any further argument as to the specific section that I think resolves the issue as the Motion for Relief filed yesterday requests, but I think it is a sound argument rooted in Section 6 as an entirety, and I would ask the Court to deny the motion and stand on the ruling."

¶ 15    After arguments, the circuit court made the following findings:

"The Court has heard the arguments of counsel. The Court has reviewed the statute. The Court has taken notice of the evidence presented at [the] hearing on the 15th.

\* \* \*

In arguments yesterday—well, let's look at what the law is as of now. 725 ILCS 5/110-6.1 provides for—excuse me. Six, not 6.1, six provides for the revocation of pretrial release, and in paragraph A, a condition precedent is the charging of a felony or Class A Misdemeanor when someone is on pretrial release.

The Court would also note that subparagraph I in this statutory scheme of 710—725 5/110-6, sub paragraph I, nothing in this section shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release under sub-section A of Section 110-6.1 or subdivision (d)(2) of Section 110-6.1 [(see 725 ILCS 5/110-6.1(a), (d)(2) (West 2022))].

The Court in—moves next to 725 ILCS 5/110-6.1, the denial of pretrial release statute, (d)(2), if the State seeks to file a second or subsequent petition under this

section, the State shall be required to present a verified application setting forth in detail any new facts not known or obtainable at the time of the filing of the previous petition.

Now, the violations of the electronic monitoring could well be new facts that arose after the original hearing. Violations of electronic home or monitoring or other conditions for otherwise detainable offense can have a return to detention, and that is set forth in sub-section I of 110-6 and (d)(2) of 110-6.1.

The Court in reviewing the Motion for Relief finds with detainable offenses, when there is not a new charge, the appropriate mechanism would be to file a subsequent or second verified motion for pretrial detention or denial of pretrial release, as we call them in this courthouse.

* * *

I am going to grant the Motion for Relief, but I will look to the State. Is the State looking to file a second petition to deny pretrial relief, and if so, should we set this for hearing on Monday?"

¶ 16 The State responded that it did intend to file a second petition to deny pretrial release, and the circuit court continued the hearing until May 20, 2024. The circuit court then released the defendant under the previous terms and conditions, including electronic monitoring.

¶ 17 The State filed a second petition to deny pretrial release the same day. The State's motion alleged that the defendant had committed a detainable offense, that the defendant posed a real and present threat to the safety of person(s) or the community, and that there was no condition or combination of conditions that would mitigate the threat. The second petition stated that it was

brought pursuant to section "725 ILCS 5/110-6.1(d)(2)." The State's second petition further stated as follows:

> "That said facts regarding violations of Defendant's Electronic Monitoring were not in existence at the time of the State's first Petition to Deny Pretrial Release and in accordance with 725 ILCS 5/110-6.1(d)(2), this Second Petition to Deny Pretrial Release is necessary to protect persons or the community based upon the above evidence and Defendant's failure to comport his behavior to mandates from this Court, designed to protect the named victim and others in the community."

¶ 18    On May 20, 2024, the circuit court conducted a hearing on the State's second petition to deny pretrial release. The State argued that there was a clear pattern of at least 85 violations of electronic monitoring, that the underlying offenses were detainable and violent in nature, that the dangerousness of the defendant still existed, and that no conditions would mitigate the risk given the defendant's violations of his pretrial release conditions.

¶ 19    The defendant requested that the circuit court take judicial notice of all the evidence at the prior hearing on the motion for revocation, and the circuit court stated that it would take notice of the entire proceeding. The defendant then argued that the State had not proven by clear and convincing evidence that no condition or combination of conditions could protect the community or a specific individual. The defendant also argued that none of the alleged violations involved any contact with the protected party and that there were no allegations of criminal activity. After arguments, the circuit court found as follows:

> "The Court reaffirms or re—refinds that by clear and convincing evidence the proof is evident or the presumption great that the defendant has committed a qualifying act or offense. The Court finds by clear and convincing evidence that the defendant

poses a real and present threat to the safety of any person or persons and of the community. The Court notes that the evidence shows that defendant's actions were violent in nature and included the use of—or threat of use of a weapon. Defendant's criminal history is noted, statements made or attributed by the defendant, that there is evidence that the defendant had access to weapons. The Court then looks towards whether a condition or combination of conditions could mitigate the real and present threat to the safety of person. This Court made a determination that the electronic home monitoring would mitigate. Based upon the Second Petition for Denial of Pretrial Relief wherein there were in excess of 80 violations of the electronic home confinement, this Court finds by clear and convincing evidence that electronic home confinement cannot mitigate because it has no impact upon the behavior of [the defendant] based upon the evidence presented. The Court then finds by clear and convincing evidence that there are no conditions or combinations of conditions that could mitigate the real and present threat of safety to any person or persons. Based upon that, I will grant the Second Petition for Denial of Pretrial Relief and I will order the detention of [the defendant]."

¶ 20 The defendant filed a motion for relief on June 5, 2024. The defendant's motion again alleged that the State did not have a statutory basis for filing a second petition to deny pretrial release. In the alternative, the defendant alleged that the State failed to meet its burden with regard to the presumption that the defendant committed the offenses charged; failed to prove that the defendant posed a real and present threat to the safety of any person or persons or the community; and failed to prove that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community. The defendant further

alleged that the circuit court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of the defendant at later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor. Each of the allegations were supported by specific arguments based on the articulable facts of the case.

¶ 21　The circuit court conducted a hearing on the defendant's motion for relief on June 13, 2024. The defendant argued that section 110-6.1(d)(2) of the Code (*id.* § 110-6.1(d)(2)), which allows for a subsequent petition based on new facts not known or obtainable at the time of the filing of the previous petition, should be interpreted as follows:

> "Now, that doesn't mean to me—I don't think the legislature intended something that happened between the date of the first petition and whatever date the new petition is filed because that is what 110-6 is for, when we want to revoke pretrial release.
>
> 　　Unfortunately—or fortunately—the statute is new, so there's no case law on this topic that I'm aware of, couldn't find any committee notes or things of that nature, but this is more along the lines of being able to bring something to the Court's attention of, 'Hey, we couldn't find this witness,' or 'Hey, we now have DNA results or gunshot residue results,' which by the way we would have proffer to the Court we now have gunshot residue results."

¶ 22　In response to the defendant's argument, the circuit court stated as follows:

> "I do agree with [defense counsel] that this is a new statute and we are—we are not having many appellate court decisions upon issues of subsequent petitions to deny pretrial release.

This Court, however, would find that to not allow a petition to—for subsequent pretrial detention following violations of conditions, meaning subsequent acts, would defeat the whole purpose because there are often times that conduct will exist, such as this, that did not rise to the level of statutory or criminal violation, bringing into effect a Petition to Revoke Pretrial Release."

The circuit court then denied the defendant's motion for relief, and the defendant timely filed an appeal of the circuit court's May 20, 2024, detention order.

¶ 23   On appeal, the defendant argues that the circuit court erred in ordering him detained since the State lacked a statutory basis to file a second petition to deny pretrial release. In the alternative, the defendant argues that the State failed to prove that the defendant posed an unmitigable safety threat. The defendant also argues that the circuit court made no written findings regarding why the no-contact order, alone, would be insufficient, thus failing to comply with section 110-6.1(h)(1) of the Code (*id.* § 110-6.1(h)(1)).

¶ 24                                  II. ANALYSIS

¶ 25   The first issue the defendant raises on appeal is whether the circuit court erred in ordering the defendant detained, arguing that the State lacked a statutory basis to file a second petition to deny pretrial release. The defendant states that section 110-6.1(c)(1) allows the State to file a petition to deny pretrial release when a defendant first appears before a judge or within 21 calendar days of a defendant's arrest and release. *Id.* § 110-6.1(c)(1). If the State's petition is denied and the defendant is released, the defendant states that section 110-6(a) provides that a petition to revoke may be filed if the defendant had been charged with a detainable offense and then commits another felony or Class A misdemeanor. *Id.* § 110-6(a). As such, the defendant argues that the above provisions are the statutory means to detain a defendant prior to trial. The defendant further

12

argues that if a defendant is on pretrial release and commits a noncriminal act prohibited by the circuit court's conditions of release, the remedy is to file a petition for sanctions pursuant to section 110-6(c)(4), (d). *Id.* § 110-6(c)(4), (d). Therefore, the defendant argues that he committed the noncriminal acts of unauthorized stops and that the proper procedure was a petition seeking sanctions, not a petition to revoke or a subsequent petition to detain.

¶ 26 The defendant also argues that section 110-6.1(d)(2) does not authorize a second petition to deny pretrial release, based on the facts of this case. According to the defendant's argument, the plain language of section 110-6.1(d)(2) established that a second detention petition is only permitted where the State has discovered new facts relevant to the initial detention ruling that were unknown or not obtainable when the initial petition was filed. The defendant argues that when section 110-6.1(d)(2) is read in conjunction with the other statutory provisions above, it becomes clear that the purpose of section 110-6.1(d)(2) is to allow the circuit court to reconsider its initial decision with a more complete understanding of the facts as they existed at the time of the filing of the initial petition. Therefore, the defendant argues that section 110-6.1(d)(2) does not authorize the filing of a second petition to deny pretrial release, based on facts that occurred after the filing of the first petition, such as the commission of a new offense or a violation of pretrial release conditions, since those circumstances are specifically addressed elsewhere in the statutory scheme.

¶ 27 Before proceeding with the State's argument regarding section 110-6.1(d)(2), we note that the State asserts that the "defendant raises specifically for the first time that the petition is improper because [it's] untimely." As such, the State claims that the defendant has forfeited the issue on appeal. This court, however, can find no timeliness issue raised in the defendant's brief. Therefore, we find this argument to be without merit, and we will proceed to address the State's remaining arguments.

13

¶ 28    The State argues that the plain language of section 110-6.1(d)(2) allows for a second or subsequent petition and that the purpose of section 110-6.1(d)(2) is to allow the State to more fully or accurately explain the reason that detention is necessary. The State argues that it would be "nonsensical" to limit the filing of a second petition based upon "new facts" relevant to the circuit court's initial detention analysis. According to the State's argument, section 110-6.1(d)(2) anticipates that once the State learns of or discovers new facts, the State will immediately file a subsequent petition if the information suggests that detention is necessary. The State also argues that although section 110-6 specifically addresses violations of pretrial release conditions and limits noncriminal violations to a maximum of 30 days in jail as a sanction, section 110-6.1(d)(2) provides the State with a means to pursue detention following pervasive and/or dangerous noncriminal violations. See *id.* §§ 110-6, 110-6.1(d)(2).

¶ 29    The State also points to subsection (i) of section 110-6, which states that "[n]othing in this Section shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release under subsection (a) of Section 110-6.1 or subdivision (d)(2) of Section 110-6.1." *Id.* § 110-6(i). As such, the State argues that subsection (i) of section 110-6 allows for a subsequent petition to deny pretrial release pursuant to section 110-6.1(d)(2) and a subsequent petition to deny pretrial release remains a viable option for the State to seek detention following a defendant's noncriminal violations of pretrial release conditions.

¶ 30    The State next argues that sections 110-6.1(d)(2) and 110-6 complement one another and prevent a circuit court from being bound by a previous decision to release with conditions, where the circuit court subsequently learns that the defendant will not comply with the ordered conditions of pretrial release. Finally, the State argues as follows:

14

"Surely, the Act does not require a circuit court to sit back idly and watch a defendant continually violate its order until the violation is egregious enough that someone is harmed, and a new charge can be brought. Surely, the only option for continuous and pervasive violations of pretrial release orders is not simply to place defendant in jail for 30-day periods, over and over, as if punishing defendant with some sort of draconian time-out."

¶ 31    In the alternative, the State requests that this court construe the subsequent petition to deny pretrial release as a petition for revocation for violation of a protective order pursuant to section 110-6(a) (*id.* § 110-6(a)), if this court determines that a subsequent petition was not available under the facts of this case. The State acknowledges that there is no specific allegation that the defendant contacted, or attempted to contact, the protected person, but argues that the entirety of the electronic monitoring and the entry of the no-contact order was to protect the victim from the defendant and was crucial to mitigating the threat against the protected person. Thus, the State argues that a violation of the electronic monitoring conditions is a violation of the order of protection, in that the two cannot be separated because they both work in conjunction to ensure the safety of the victim in this matter.

¶ 32    Both parties state within their briefs that they have conducted research but could not locate any case law that directly addresses the interpretation of section 110-6.1(d)(2) with regard to "any new facts not known or obtainable at the time of the filing of the previous petition." *Id.* § 110-6.1(d)(2). Our research confirmed the same. Thus, we are faced with an issue of first impression. The interpretation of a statute that does not involve disputed facts presents a question of law subject to *de novo* review. *People v. Beachem*, 229 Ill. 2d 237, 243 (2008); *People v. Woods*, 193 Ill. 2d 483, 487 (2000). Under a *de novo* standard of review, this court does not defer to the lower's court

15

judgment or reasoning but performs the same analysis that the lower court would perform. *People v. Avdic*, 2023 IL App (1st) 210848, ¶ 25.

¶ 33   It is well established that our primary goal in interpreting a statute is to ascertain and give effect to the drafters' intent, of which its language is the best indicator. *Beachem*, 229 Ill. 2d at 243. We consider the statute as a whole and give the words used by the drafters their plain and ordinary meaning, thereby ensuring that no part is rendered meaningless or superfluous. *Id.*; *People v. Hilton*, 2023 IL App (1st) 220843, ¶ 16. We further do not depart from the plain language of the statute by reading into it any unexpressed exceptions, limitations, or conditions, and we presume that the drafters did not intend an absurd, inconvenient, or unjust result. *Hilton*, 2023 IL App (1st) 220843, ¶ 16. If a statute's language is ambiguous, such that the drafters' intent is not apparent from its face, this court may use tools of statutory construction to help determine the drafters' intent. See *People v. Perry*, 224 Ill. 2d 312, 323-24 (2007); *People v. Roberts*, 214 Ill. 2d 106, 117 (2005).

¶ 34   Section 110-6.1(d)(2) states as follows:

> "(2) If the State seeks to file a second or subsequent petition under this Section, the State shall be required to present a verified application setting forth in detail any new facts not known or obtainable at the time of the filing of the previous petition." 725 ILCS 5/110-6.1(d)(2) (West 2022).

¶ 35   "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *People v. Jameson*, 162 Ill. 2d 282, 288 (1994). Here, we find that the statute's language is ambiguous, since it is susceptible to being understood in two different senses—that is, whether "any new facts not known or obtainable at the time of the filing of the previous petition" limits "new facts" to facts that existed at the time of the initial

16

hearing or encompasses facts that arise after the initial hearing. Thus, we turn to the canons of statutory construction to aid in our effort to give effect to the drafters' intent.

¶ 36  Under the whole-text canon, words and phrases are not viewed in isolation but are considered in light of other relevant provisions of the statute. *Beachem*, 229 Ill. 2d at 243. As the defendant points out, section 110-6.1(a) governs the filing of an initial petition to deny pretrial release, and section 110-6(a) governs the revocation of pretrial release. 725 ILCS 5/110-6(a), 110-6.1(a) (West 2022). A defendant's pretrial release may only be denied or revoked in certain statutorily limited situations. *Id.* §§ 110-6, 110-6.1.

¶ 37  Although section 110-6.1(a) is not applicable in this matter, since the time for filing an initial petition has expired, we review the provision for the requirements that the legislation has set forth for an initial detention determination. *Id.* § 110-6.1(a). Under 110-6.1(a), the circuit court may order a defendant detained pending trial if the defendant is charged with a qualifying offense and the circuit court concludes that the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 38  If the defendant is granted pretrial release, section 110-6 becomes the controlling provision with regard to "[r]evocation of pretrial release, modification of conditions of pretrial release, and sanctions for violations of conditions of pretrial release." *Id.* § 110-6. Section 110-6(a) states as follows:

"When a defendant has previously been granted pretrial release under this Section

for a felony or Class A misdemeanor, that pretrial release may be revoked only if

the defendant is charged with a felony or Class A misdemeanor that is alleged to

17

have occurred during the defendant's pretrial release after a hearing on the court's own motion or upon the filing of a verified petition by the State." *Id.* § 110-6(a).

¶ 39   We note that section 110-6.1(a) requires a qualifying offense to initially detain a defendant and 110-6(a) requires a subsequent felony or Class A misdemeanor while on pretrial release in order to revoke pretrial detention. Both provisions, therefore, require the defendant to have committed a criminal offense, as set forth in those provisions, in order to deny or revoke pretrial detention. Section 110-6(a), however, does not require proof of the defendant's real and present threat or proof that no condition or combinations of conditions could mitigate that threat. *Id.*; see *People v. McWilliams*, 2024 IL App (4th) 240406-U, ¶ 17. Courts have held that "[t]he Code makes clear that pretrial release can only be revoked when a defendant is charged with a felony or class A misdemeanor committed while on pretrial release or charged with violating a protection order." *People v. Williams*, 2024 IL App (1st) 240480-U, ¶ 28; see *People v. Bibbs*, 2024 IL App (1st) 240208-U, ¶ 19 (revocation of pretrial release is only possible when the defendant has been granted pretrial release and is charged with a felony or Class A misdemeanor while on pretrial release).

¶ 40   For offenses other than a felony or Class A misdemeanor that are committed while on pretrial detention, the State may file a verified petition requesting a hearing for sanctions following the procedures in section 110-6(c)-(f). 725 ILCS 5/110-6(c)-(f) (West 2022); see *People v. Barner*, 2023 IL App (1st) 232147, ¶ 21 (court may not revoke a defendant's pretrial release merely for failing to appear, but the State can seek, and the court may enter, sanctions). In this manner, the statute differentiates "revocation" violations and "sanctions" violations. Sanctions violations are noncriminal or low-level criminal violations, *i.e.*, violations of conditions of pretrial release set by

the circuit court. Revocation violations, however, must rise to the level of a felony or Class A misdemeanor.

¶ 41　We further take notice of section 110-6(b), which states as follows:

> "(b) If a defendant previously has been granted pretrial release under this Section for a Class B or Class C misdemeanor offense, a petty or business offense, or an ordinance violation and if the defendant is subsequently charged with a felony that is alleged to have occurred during the defendant's pretrial release or a Class A misdemeanor offense that is alleged to have occurred during the defendant's pretrial release, such pretrial release may not be revoked, but the court may impose sanctions under subsection (c)." 725 ILCS 5/110-6(b) (West 2022).

As such, section 110-6(b) does not allow for the revocation of a defendant's pretrial release, even if the defendant commits a felony or Class A misdemeanor while on pretrial release, where the defendant was previously granted pretrial release for a Class B or Class C misdemeanor offense, a petty or business offense, or an ordinance violation. *Id.*

¶ 42　Each of the above provisions set forth specific conditions in which a circuit court may deny pretrial release, revoke pretrial release, or impose sanctions for violations of pretrial release. Viewing section 110-6.1(d)(2) in light of the above provisions, we do not believe that it was the legislature's intent to provide a means by which the State may bypass the requirements of these sections by filing a subsequent petition to deny pretrial release.

¶ 43　Another fundamental principle of statutory construction is that words and phrases should be interpreted so that no terms are rendered superfluous. *Grant Importing & Distributing Co. v. Amtec International of NY Corp.*, 384 Ill. App. 3d 68, 72 (2008). Section 110-6(a) provides the specific requirement for revocation of pretrial release—that is, the commission of felony or Class

A misdemeanor when the defendant had previously been granted pretrial release for a felony or Class A misdemeanor. This requirement for revocation would become superfluous if the State could simply file a subsequent petition to deny pretrial release based on any "new facts," even if those facts do not give rise to the requirements for revocation of pretrial release. If the legislature had intended that a subsequent petition to deny pretrial release could be based on any violation of the conditions of pretrial release, it could have simply stated that within the statutory scheme. Instead, the legislature set out specific requirements for the revocation of pretrial release and for the imposition of sanctions.

¶ 44    We also note the nearest-reasonable-referent canon, also known as the last antecedent rule, which provides that relative or qualifying words or phrases in a statute serve to only modify words or phrases that are immediately preceding. See *Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081, ¶ 46; *People v. Davis*, 199 Ill. 2d 130, 138 (2002). Section 110-6.1(d)(2) contains the qualifying phrase "at the time of the filing of the previous petition." 725 ILCS 5/110-6.1(d)(2) (West 2022). That phrase qualifies "new facts not known or obtainable" (*id.*) and lends support to the interpretation that the provision is referring to those facts related to the filing of the previous petition and not, as the State argues, new facts arising out of subsequent actions. Again, if the legislature had intended "new facts" to encompass subsequent actions unrelated to the initial petition to deny pretrial release, such as repeated violations of pretrial conditions other than those violations listed in section 110-6(a), they could have so stated. As such, we find that the qualifying phrase limited the new facts to those related to the initial petition that could have had a bearing on the circuit court's initial detention determination, *e.g.*, locating a witness, locating video evidence, lab or expert results received posthearing, etc.

¶ 45    The State also argues that section 110-6(i) lends support to its interpretation of section 110-6.1(d)(2). Section 110-6(i) states that nothing in section 110-6 shall be construed to limit the State's ability to file a verified petition to deny pretrial release under section 110-6.1(a) or 110-6.1(d)(2). *Id.* § 110-6(i). We find this argument to be unpersuasive. Interpreting 110-6.1(d)(2) as limited to those new facts that were unknown or unobtainable at the time of the filing of the initial petition, and not from any subsequent conduct, simply clarifies the new facts requirements of 110-6.1(d)(2). Pursuant to section 110-6(i), the State may still file a verified petition, or a subsequent petition, to deny pretrial release if the requirements of section 110-6.1(a) or 110-6.1(d)(2) are met.

¶ 46    Therefore, we hold that a subsequent petition to deny pretrial release pursuant to section 110-6.1(d)(2) cannot be based on subsequent noncriminal violations of pretrial release. As such, we find that the circuit court erred in granting the State's second petition to deny pretrial release.

¶ 47    Finally, we note that, while not specifically addressing the issue of "new facts" within section 110-6.1(d)(2), *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 16, 18, 58, upheld a circuit court's granting of a subsequent petition pursuant to section 110-6.1(d)(2) to deny pretrial release, where the State proffered additional evidence regarding one of the victims that was unknown at the time of the filing of previous petition. Since the "new facts" were not based on any subsequent conduct of the defendant, the *Saucedo* court did not address whether a subsequent petition pursuant to section 110-6.1(d)(2) could be based on violations of pretrial release. In *People v. Wolf*, 2024 IL App (2d) 230457-U, ¶ 17, the court held that a petition to deny pretrial release was not a subsequent petition pursuant to section 110-6.1(d)(2), where the earlier petition had been voluntarily withdrawn prior to ruling. With regard to section 110-6.1(d)(2), the *Wolf* court stated as follows: "Our reading of this language suggests that the purpose of section 110-6.1(d)(2) seems to be to prevent the State from taking the proverbial second bite of the apple where no new facts

21

justify overturing a trial court's prior decision to grant a defendant pretrial release." *Id.* ¶ 16. While neither of these cases specifically address whether a section 110-6.1(d)(2) petition can be based on new facts arising from conduct subsequent to the filing of the previous petition, neither do they suggest a different interpretation of section 110-6.1(d)(2) than we have determined herein.

¶ 48　Since we have determined that reversal is required on this issue, we need not address the defendant's remaining issue on appeal. We further decline the State's request to construe the second petition to deny pretrial release as a petition for revocation for violation of a protective order pursuant to section 110-6(a) (725 ILCS 5/110-6(a) (West 2022)). Upon remand, there is no statutory prohibition preventing the State from filing a subsequent verified motion for revocation of pretrial release, if the requirements of section 110-6 are met and the circuit court is in the best position to hear such a motion.

¶ 49　　　　　　　　　　　III. CONCLUSION

¶ 50　For the foregoing reasons, we reverse the May 20, 2024, order of the circuit court of Coles County, granting the State's second petition to deny pretrial release, and remand with directions that the circuit court release the defendant from pretrial detention, with or without modification of his conditions of pretrial release as the circuit court may deem appropriate and as provided for in section 110-5 (*id.* § 110-5). Finally, given that the defendant is being improperly held in pretrial detention, we direct that the mandate in this case be issued immediately.

¶ 51　Reversed and remanded with directions.

*People v. Farris*, 2024 IL App (5th) 240745

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Coles County, No. 23-CF-294; the Hon. Brian L. Bower, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Bryon M. Reina, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |