2025 IL App (1st) 250438

SECOND DIVISION
June 4, 2025

No. 1-25-0438B

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24CR1597 |
| | ) | |
| JAMIE MILLER, | ) | Honorable |
| | ) | Maria Kuriakos-Ciesil, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court with opinion.
Justices Howse and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Jamie Miller, appeals the trial court's order revoking his pretrial release.

¶ 2     The record shows that defendant was arrested on or about January 18, 2024, and charged with first degree murder in relation to the November 2023 death of the victim, Andrew Hulburt. A detention hearing was held on March 6, 2024. The facts proffered at the hearing established that defendant encountered the victim outside of a concert venue, and they engaged in a verbal dispute during which the victim, who was intoxicated, called defendant a "b***." According to the defense, the victim—a white man—also uttered a racial slur at defendant—a black man. Defendant punched the victim once about the head, and the victim fell backwards and struck the back of his

head on the sidewalk. The victim was transported to the hospital and "declared deceased." The medical examiner determined the cause of death to be homicide from a "vertebral artery dissection." When questioned by the court, the ASA stated that he was not sure if the medical examiner was able to determine whether the vertebral artery dissection was caused by defendant's strike or the victim's fall.

¶ 3     In ordering defendant's detention, the trial court found that the proof was evident or presumption great that defendant committed the offense of first degree murder, commenting that defendant knew "that [his] fist [wa]s going to connect with the victim" and that while "defendant's intention may not have been to kill" the victim, he intended to "do bodily harm which resulted [in] great bodily harm."

¶ 4     On appeal, this court reversed the trial court's order to detain defendant, noting that the court's comments "reflect[ed] a misunderstanding of the requirements for intentional and knowing murder in Illinois." Specifically, for defendant to be found guilty of first degree murder, the State would have to prove that he either intended to kill or do great bodily harm to the victim, that he knew his acts would cause the victim's death (see 720 ILCS 5/9-1(a)(1) (West 2022)) or that, in performing the acts which caused the victim's death, he knew that his acts created a strong probability of death or great bodily harm  to the victim (see *id.* § 9-1(a)(2)).

¶ 5     We explained that there "is a long-standing general rule in Illinois that death is not ordinarily contemplated as a natural consequence of a blow or blows from a bare fist." See *People v. Crenshaw*, 298 Ill. 412, 414-17 (1921) (reversing murder conviction where defendant struck the victim in the face with a clenched fist, knocking the victim down. "[S]triking of a blow with the fist on the side of the face or head is not likely to be attended with dangerous or fatal consequences, and no inference of an intent to kill is warranted from the circumstances disclosed by the proof in

this case."); *People v. Mighell*, 254 Ill. 53, 59 (1912) (reversing a defendant's murder conviction where the defendant punched the victim in the neck with a bare fist, fracturing the base of the victim's skull and causing a hemorrhage in the victim's carotid artery: "[T]he defendant was guilty of no more than manslaughter, and he should not, therefore, have been convicted of murder. *** There is not the slightest reason *** to suppose that he contemplated the [deceased's] death or even any serious injury to him."); *People v. Gresham*, 78 Ill. App. 3d 1003, 1007 (1979) ("death is not a reasonable or probable consequence of a blow with a bare fist"); *People v. Nibbe*, 2016 IL App (4th) 140363, ¶ 34 (reversing a defendant's second degree murder conviction where the defendant punched the victim once or twice in the face with a bare fist); *People v. Yeoman*, 2016 IL App (3d) 140324, ¶ 22 ("[T]here is no dispute in this case that defendant struck [the victim] only one time in the face with his bare fist. That conduct alone is not the type of conduct that would generally create a strong probability of death or great bodily harm to the victim. [Citation.] Defendant, therefore, could not have knowledge that such a result was practically certain to occur."). Because "the record suggest[ed] that the court was unaware of the legal principles set forth above, and applied an incorrect legal standard in evaluating the proffered facts," we remanded the matter to the trial court to reconsider whether defendant should be entitled to pretrial release in light of the law described above.

¶ 6     Upon remand, the trial court granted defendant pretrial release on May 31, 2024, subject to electronic monitoring. Neither a transcript from the hearing, nor a written order appear in the record on appeal.

¶ 7     At some point thereafter, defendant was charged with a new "theft" offense, and the State filed a petition to revoke defendant's pretrial release, asserting that he had been charged with a "new Felony or Class A misdemeanor." Although the record also does not include a transcript or

written order, the State's petition was apparently denied after the court determined that the new charge was based on an offense that was alleged to have occurred prior to the November 2023 offense at issue in this case, and accordingly, revocation of defendant's pretrial release was not warranted.

¶ 8 On February 6, 2025, the State filed another petition to revoke defendant's pretrial release. On the form order, the State checked boxes indicating that the "nature of [defendant's] violation" was "Violation or Sherriff's EM" and "Other violation of pretrial release conditions." The State handwrote that "[d]efendant is a named offender in a sexual assault allegations [*sic*] that occurred in his residence."

¶ 9 The parties appeared before the court that day. The Assistant State's Attorney (ASA) reminded the court of the prior procedural history of the matter, and stated that the State's Attorney's Office had recently received a "report" of

> "a violation of conditions of pretrial release from the Cook County Sheriff's Office for their electronic monitoring unit. In this report, there are allegations that this defendant has been named an offender of a criminal sexual assault that took place at his residence, which is also his host site, and that there is a 14-year old victim who was sexually assaulted in this residence.
>
> At this point it appears that this is still a pending investigation. Once the sheriffs were made aware of this investigation, the defendant was re-incarcerated due to the nature of the allegations, and after having a conversation with DCFS, who [*sic*] was notified about these allegations, due to the fact that there are three female minors who live at the host residence as well. The defendant indicated he had no other place to stay."

4

¶ 10     The court asked the ASA what "specific allegation" was "made by the victim," and the ASA responded, "I don't believe there's a specific allegation, your Honor." The court asked, "But it's criminal sexual assault?" The ASA responded, "That is how it's been framed in this report. I do not have any of the actual specific allegations." The court then stated, "I think we need to get more information, wouldn't you say, State?" The ASA agreed and stated that she would "work on getting an answer for more specifics about this case."

¶ 11     Defense counsel then stated her concern that the State's Attorney's Officer was filing "these violations when there's no bas[i]s for it, they haven't even contacted Felony Review to see if they're going to even charge him. So at this point, it's still an investigation." Defense counsel argued that the specific allegations were irrelevant, unless there was a charge filed against defendant. "Technically, he hasn't violated, there's no charges."

¶ 12     The court responded that it was going to give the ASA "the opportunity to figure out what's going on." The court asked the parties to return in about an hour, so that the ASA could "make the phone call to figure out what is happening."

¶ 13     When the parties returned, the ASA stated that she spoke to a sergeant "from the sheriff's EM department," who informed the ASA

> "that they were contacted by a CPD detective who stated that [defendant] is the named individual in a sexual assault investigation. Now, [defendant] has not been charged or arrested in that case, but he is the named individual, so EM was asked to do a compliance check at the host residence.
>
> EM arrived at the host residence to do that compliance check. When they arrived, [defendant] was at that residence, as well as three minor individuals. Now,

the allegations involved in the sexual assault investigation also involved a minor individual."

¶ 14    The trial court asked if the minor victim was one of the minors at the home. The ASA responded, "No," and defense counsel clarified that the three minors were defendant's children.

¶ 15    The ASA continued:

"EM then contacted DCFS and let them know that there were three minors at the host site and that the defendant is a named individual in a sexual assault investigation. DCFS expressed their concern that there were three minors in this host residence. DCFS had also prior contact regarding this host residence and [defendant].

Based on this prior contact and the fact that there were three minors in the host site at this time and the allegations from the Chicago Police Department, DCFS asked EM to remove [defendant] from this host site. EM then asked [defendant] if he had anywhere else to stay. [Defendant] relayed to EM that he did not.

EM then contacted the director of EM who relayed that [defendant] did not have anywhere else to stay. Based on EM's practice that [defendant] needed to be removed from the residence, the host site, and that he did not have anywhere else to stay, EM then placed [defendant] into custody, which is typical of their policy. If they do not have anywhere else to go, they are placed into custody.

So that is *** sort of the summary of why [defendant] stands before you in custody today."

¶ 16    Based on the above, the ASA stated that the State's "position stands. That this defendant, while not charged yet nor arrested, we do have the information that he is a named offender in a sexual assault case, and we are asking that his pretrial release be revoked."

¶ 17    Defense counsel responded that it "sound[ed] like the only issue is whether he had a place to go," and that it was not sufficient to "violate him." Defense counsel also argued that counsel's "understanding is that DCFS asked for EM to violate him." Counsel "presume[d] they thought that might be in the best interest of the child" but DCFS was "not a party here," and it was not appropriate for DCFS "to come in and interfere on a criminal case and ask to revoke [defendant]'s bond." Counsel noted that there was never a prior condition of release involving defendant's contact with any minors, so "it's not a violation at this point." Defense counsel further argued,

> "I think you understand that these are allegations and he hasn't been charged. If we were in a situation where he had been charged, I can understand a position to try to violate his pretrial conditions, but again, my position is this is premature in nature, there aren't any charges pending."

¶ 18    In ruling, the court stated, "So, folks, this is a very serious allegation. I am not making decisions about guilt or innocence, but I have to take into consideration when [*sic*] I am being presented through proffer." The court noted that there was a report, and

> "[i]n that report, it doesn't say anything about charges, but it does say that the victim was taken to a hospital, a Vitullo kit was done. I also heard from the State through their proffer that it was a Chicago Police Department detective that spoke to the sheriff's personnel regarding the allegations.
>
> So I cannot just look the other way and say, well, charges aren't filed and therefore defendant remains on EM. I have to take into consideration that these

7

charges are serious, proffer has been made, the victim is alleged to be a 14-year old young lady, young girl, and I am not making decisions about guilt or innocence, but I have to take into consideration the safety of others, safety of the defendant. It happened allegedly in the home that I placed the defendant on electronic monitoring.

So based on everything I have at this time, I'm making the decision to revoke the defendant's pretrial detention"

¶ 19    Defense counsel protested, "what if a month from now he's never charged? What if he's never charged two months from now, then what?"

¶ 20    The court responded,

"I am making my ruling. I gave you an opportunity to speak. You all had the opportunity to speak. I find it highly rude when the Court is making its ruling, attorneys try to interrupt the Court. You all had your opportunity to speak. If you don't like my decision, you can appeal me."

¶ 21    Defense counsel then stated that defendant was "going to file an appeal" because "I don't think you can do it without charges. He didn't violate. There's no charges."

¶ 22    The court responded:

"I'm giving you a warning at this point. You know what you can do, you can go ahead and do that. So at this time, that's my order. *** Defendant's pretrial release is revoked. The order is entered."

¶ 23    Defense counsel then asked:

DEFENSE COUNSEL: Can I just ask specifically what's the finding for the violation?"

THE COURT: The defendant's pretrial release is revoked. Order is entered.

DEFENSE COUNSEL: No, I understand. I'm just asking for the finding, like are we considering this a new arrest. I don't think we are.

THE COURT: [Counsel], the State has indicated there are no charges pending.

DEFENSE COUNSEL: Right.

THE COURT: Right now, it is a revocation of pretrial release based on everything I've heard.

DEFENSE COUNSEL: Okay. *** Your Honor, again, just for the record, just because I do plan on filing a motion to reconsider, and so we're not finding that this isn't a new — is there a specific *** condition of release that had been violated?

THE COURT: Yes. The condition of release is the allegations that the State has presented as a proffer to the Court stating that a Chicago police officer has contacted the Cook County Sheriff's Police regarding the allegations that they're allegedly investigating, there's a 14-year old who has, according to the reports that I've been presented, taken to the hospital for a Vitullo kit to be conducted. So there are allegations that the defendant committed criminal sexual assault.

DEFENSE COUNSEL: Okay.

THE COURT: Now, charges have not yet been brought against him.

DEFENSE COUNSEL: Right.

THE COURT: But this Court cannot just ignore the allegations that are being made at this time with nothing more other than you all saying no charges have been filed. Charges are separate and apart. These are allegations, serious allegations made, against your client at the home that he was placed at on electronic monitoring with

9

Chicago Police being involved, obviously DCFS being involved, and the State filing their petitions to revoke. So based on all I have at this point, I'm revoking it, with the understanding that if there's additional information that either side wants to present, file a motion.

¶ 24 On February 24, 2025, counsel for defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h). Among other things, defense counsel argued that the court "prematurely ordered [defendant] detained, inconsistent with Illinois' pretrial detention statutes." Counsel noted that under 725 ILCS 5/110-6(a),

"When a defendant has previously been granted pretrial release under this Section for a felony or Class A misdemeanor, that pretrial release may be revoked only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release after a hearing on the court's own motion or upon the filing of a verified petition by the State."

Defense counsel explained that defendant had not been charged or arrested, and that accordingly, revocation of his pretrial release was not warranted.

¶ 25 The parties appeared before the court. The court asked if the State had been able to contact the "CPD officer" and find out "what the status of the investigation is, if charges are being filed." The ASA responded that she had "spoken with the detective who is assigned to this case" and, as of February 19, 2025, "he indicated to me that it was an active investigation that was still ongoing. *** [H]e was still waiting to set up interviews with several people and/or minors."

¶ 26 Defense counsel began to argue the motion for relief, but the court interrupted, asking the ASA if the State was ready for hearing. The ASA responded that she had received the motion the

10

previous night, and asked for 48 hours to review it. The court agreed. Defense counsel objected, stating that the motion

"just goes over the statute. It's the law. She should know the – he's being held unlawfully, that's why I'm pressing, Judge. He cannot be held.

\*\*\*

Judge, the statute specifically says, when a defendant has previously been granted pretrial release under this section for a felony or Class A misdemeanor, that pretrial release may be revoked only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release after a hearing on the Court's own motion or upon the filing of a verified petition by the State.

That's specifically what the statute states. He has to have been charged. He has not been charged. He has been in custody since January 22nd off of an allegation, off of an investigation, Judge. He hasn't been charged."

¶ 27    The court continued the matter for hearing on February 28, 2025.

¶ 28    At the February 28 hearing, defense counsel reiterated,

"I think it's pretty clear. I've cited the statute in my motion that he cannot be held. The statute cites that he has to be charged with an offense. \*\*\* There's no argument that the State can possibly make contrary to that.

The law is that if he's charged with a Class A misdemeanor or a felony, then your Honor can revoke his pretrial detention. Other than that, the statute doesn't permit it. He has to be charged.

11

So, Judge, I am asking for his release from custody. The State is saying that the police aren't [*sic*] investigating, and we know that DCFS is involved. And so to say essentially that he has to remain in custody for the duration of their investigation I think is a violation of his rights, multiple rights, his right to due process, Judge. It's a violation of his liberty interest, Judge. So I am asking for him to be released from custody."

¶ 29    The court asked the ASA for an update on the criminal investigation, and the ASA responded that she spoke to the detective the previous day, that this was "still an ongoing investigation" and that he was "unable to give me a specific time frame at which point he will be able to wrap up this investigation."

¶ 30    The court then asked the State to reiterate the allegations on which it moved to revoke defendant's pretrial release.  The ASA responded,

"in summary, EM dispatch received a phone call from CPD Detective Winters, *** stating that the defendant was a named offender of a criminal sexual assault that took place at his residence. The victim was a 14-year-old female who has stated that she was sexually assault on January 28th of 2025. The victim made an outcry to her mother two days later.

The mother took the child victim to the hospital where a sexual assault kit was conducted on the child. The victim does not live at that residence, but during the course of the investigation the sheriffs learned that there were three minor females who did live at the residence with the defendant, a 15-year-old, 13-year-old, and a 5-year-old.

12

The detective learned that the assault took place in the basement. The defendant offered to buy the victim shoes and clothing if she did not say anything about the assault.

I have had two conversations with Detective Winters from the Chicago Children's Advocacy Center. He has indicated that this is an ongoing investigation that he is working, but he does not yet have a firm date as to when this case is going to be called in to felony review."

¶ 31    The court then ruled, stating that although "charges have not been filed," the court had to "take into consideration" the danger defendant posed "to himself and society." The trial court ordered that defendant would remain detained, and defense counsel interjected, "Judge, you're violating the law." The court responded, "You all can appeal me as you wish. But this is my ruling."

¶ 32    Defendant filed a timely notice of appeal. In this court, defendant contends that the trial court erred in revoking his pretrial release under the Pretrial Fairness Act (Act), because he has not been charged with a subsequent felony or Class A misdemeanor.  In response, the State acknowledges that "the language of the statute does require that a defendant be charged with a felony or Class A misdemeanor." It contends, however, that this court "cannot overlook an important intent of the legislature when passing the Pretrial Fairness Act: protecting the public." The State contends that the trial court "was concerned with protecting the public, and that concern warranted revoking defendant's pretrial release."

¶ 33    Defendant's challenge presents a matter of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Pearse*, 2017 IL 121072, ¶ 41. The best indicator of legislative intent is the statutory language,

given its plain and ordinary meaning. *In re Hernandez*, 2020 IL 124661, ¶ 18. When the statutory language is clear and unambiguous, we will apply it as written without resort to aids of statutory construction. *People v. Williams*, 2016 IL 118375, ¶ 15. We may not depart from the plain language and meaning of a statute by reading into the statute exceptions, limitations, or conditions that the legislature did not express. *People v. Dupree*, 2018 IL 122307, ¶ 31. "No rule of construction authorizes this court to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include." *People v. Smith*, 2016 IL 119659, ¶ 28. The construction of a statute is reviewed *de novo*. *People v. Manning*, 2018 IL 122081, ¶ 16. Additionally, a trial court's findings following a revocation hearing are also reviewed *de novo*. See *People v. Taber*, 2025 IL App (2d) 240562, ¶ 14.

¶ 34    The statute governing the revocation of pretrial release provides as follows:

> "When a defendant has previously been granted pretrial release under this Section for a felony or Class A misdemeanor, that pretrial release may be revoked *only if the defendant is charged with a felony or Class A misdemeanor* that is alleged to have occurred during the defendant's pretrial release after a hearing on the court's own motion or upon the filing of a verified petition by the State." 725 ILCS 5/110-6(a) (West 2024) (emphasis added).

¶ 35    As the State correctly concedes, the plain language of the above provision indicates that a defendant's previously granted pretrial release can be revoked only if the defendant is charged with a felony or Class A misdemeanor. Indeed, this court has repeatedly recognized that the plain language of section 110-6(a) allows pretrial detention to be revoked only when a defendant is charged with subsequent felony or Class A misdemeanor. See *People v. Hammerand*, 2024 IL App

14

(2d) 240500, ¶ 19 ("the plain language of section 110-6 requires *** that a defendant be 'charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release.' "); *People v. Perez*, 2024 IL App (2d) 230504, ¶ 14 ("Under [section 110-6(a)], a defendant's pretrial release may be revoked only if the defendant is charged with a felony or Class A misdemeanor while the defendant has been released pretrial."); *People v. McClure*, 2024 IL App (5th) 240027, ¶ 26 ("The plain language of section 110-6(a) establishes that if a defendant, while on pretrial release, commits a subsequent felony or Class A misdemeanor, said pretrial release may be revoked."); *People v. Farris*, 2024 IL App (5th) 240745, ¶ 39; *People v. Vega*, 2025 IL App (2d) 250002-U, ¶ 17 ("to revoke defendant's pretrial release *** the State was obligated to prove first that the defendant was charged with a felony or class A misdemeanor while on pretrial release."); *People v. Bibbs*, 2024 IL App (1st) 240208-U, ¶ 19 (revocation of pretrial release is only possible when the defendant has been granted pretrial release and is charged with a felony or Class A misdemeanor while on pretrial release). Where, like here, the language is clear and unambiguous, we will not look for evidence that the legislature intended something other than that plain language. *Smith*, 2016 IL 119659, ¶ 28. Based on that plain language, we conclude that the trial court's order revoking defendant's pretrial release was unlawful. See *People v. Barner*, 2023 IL App (1st) 232147, ¶ 24 ("the court had no legal authority to revoke defendant's pretrial release" for the defendant's failure to appear at a court appearance. "[T]he court may revoke a defendant's pretrial release 'only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release.' ").

¶ 36    By concluding that defendant's pretrial release could be revoked based on the allegations here, the trial court effectively added its own language to the statute—that pretrial detention may also be revoked when a person is under investigation for committing an offense. Although we

15

appreciate the court's concern regarding the seriousness of the crime that is under investigation, the trial court is not permitted to deviate from the plain meaning of a statute even if that court disagrees with the wisdom of the statute. See *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 16 ("The wisdom of legislation is never a concern for the judiciary."). The fact remains that no charges were filed against defendant,[1] and the statute does not permit pretrial release that was previously granted to be revoked upon an investigation into a criminal offense.

¶ 37   We also disagree with the State's suggestion that the trial court's order revoking defendant's pretrial release was authorized as part of the court's "inherent authority to reconsider its prior rulings and *** continued obligation to review the defendant's release status." The State cites *People v. Watkins-Romaine*, 2024 IL App (1st) 232479, for the proposition that under another section of the Act—section 5/110-5(f-5)—a court is continually required to reassess whether the current conditions imposed are necessary "to reasonably ensure the appearance of the defendant as required, the safety of any other person, and the compliance of the defendant with all the conditions of pretrial release," and that a showing of a "change of circumstances" is not required for the trial court to modify the conditions imposed.

¶ 38   Initially, we note that *People v. Watkins-Romaine*, 2024 IL App (1st) 232479 is no longer good law, as our supreme court reversed that decision in January 2025. See *Watkins-Romaine*, 2025 IL 130618. Moreover, the section cited by the State, 5/110-5(f-5), provides that at each court appearance, the trial court must consider the necessity of the current conditions, and "[t]he court

---

[1] The investigation into defendant has apparently been ongoing since February. It is now four months later, and the State has not provided any indication that the investigation has, or will soon, progress into charges.

is not required to be presented with new information or a change in circumstance to *remove* pretrial conditions." (Emphasis added). Accordingly, this section allows the trial court to remove pretrial conditions that were previously imposed upon a defendant if those conditions are no longer necessary. The section does not apply to the revocation of pretrial release, which, as discussed above, is plainly governed by a different section.

¶ 39    For the foregoing reasons, this matter is remanded for additional proceedings consistent with this opinion.

¶ 40    Reversed and remanded.

---

*People v. Miller*, 2025 IL App (1st) 250438

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24CR1597; the Hon. Maria Kuriakos-Ciesil, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Ari Williams, of Ari Williams Law, LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (Joseph Alexander, Assistant State's Attorney, of counsel), for the People. |

---