2025 IL App (1st) 251296-U

SECOND DIVISION
December 30, 2025

No. 1-25-1296B

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINIOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County |
| v. | ) ) | 25 CR 11622 |
| CYNTHIA GARCIA, | ) ) | Honorable Adrienne E. Davis, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Court did not err in granting State's motion for relief and detaining defendant.

¶ 2    This is an appeal brought under the Pretrial Fairness Act (the PFA), whose provisions are found in article 110 of the Code of Criminal Procedure. See 725 ILCS 5/art. 110 (West 2024). It presents legal issues only, concerning matters of procedure.

¶ 3    Defendant Cynthia Garcia appeals an order detaining her on charges of aggravated battery. The State alleged that defendant pistol-whipped and shot another individual during a fight in a bar. She was initially detained. A month later, the court reversed its detention order and released defendant on conditions after defendant submitted additional evidence via written

statements that suggested she acted in self-defense. Upon obtaining footage of the fight and the shooting from a security video, the State filed a motion for relief from the release order, arguing that the video contradicted defendant's version of events and strengthened the State's proof of guilt, warranting her detention. The circuit court granted the State's motion for relief and ordered defendant detained once again.

¶ 4    Defendant does not challenge the merits of the detention decision itself; she does not claim any error in the court's findings. Her arguments are purely procedural. She claims that the court, in effect, revoked her pretrial release but lacked a legal basis for doing so, as revocations of pretrial release may only take place under specific circumstances not present here.

¶ 5    We disagree. The State did not seek *revocation* of pretrial release. The court did not revoke pretrial release. Rather, the State filed a motion for relief from the court's previous release order, which it was well within its rights to do and which the court was within its authority to grant. The process here fully aligned with the requirements of state law and the supreme court rules. We affirm the judgment.

¶ 6                                  BACKGROUND

¶ 7    We will describe the events relevant to the charged offense for context only. We emphasize that we are in no way making findings or reaching conclusions on what the facts will ultimately show. Nothing we write below should be interpreted to credit or discredit defendant's claim of self-defense or innocence. That is always true in an appeal involving pretrial detention, but it is particularly true here, given that only legal questions are involved in this appeal.

¶ 8    On October 20, 2024, defendant was with a group of friends at the Illinois Bar & Grill in Chicago, when she and her group got into an argument with another group over the use of a pool table. In the resulting fistfight, defendant (the lone woman in her group) started fighting with the

only woman in the other group (the victim). The two wrestled to the floor, with defendant initially on top of the victim. As they struggled, defendant removed a firearm from her purse and pistol-whipped the victim. At one point, the gun discharged, firing a bullet into the ceiling. As they continued to fight on the floor, with defendant sitting on top of the victim and leaning over her, the victim appeared to wrap her legs around defendant's head and neck area. Defendant fired a bullet from point-blank range into the victim's leg.

¶ 9 Once the victim was subdued, defendant got to her feet. She reached down to grab her (defendant's) purse. The victim, essentially immobile, had hold of defendant's purse as well. As defendant pulled on the strap with the victim holding on, she dragged the prone victim several feet. Ultimately, unable to pry her purse from the victim, defendant stomped on the victim's hand and then walked away with her purse. Moments later, defendant again walked past the victim and the victim's friends who had gathered around her, stepping over a large pool of blood as she left the bar and grill.

¶ 10 The gunshot caused severe arterial damage and broke the victim's femur. During surgery to repair the arterial damage, the victim went into cardiac arrest and had to be revived. As far as we know, the victim is still alive.

¶ 11 On October 23, the State brought a petition for pretrial detention after charging defendant with aggravated battery with discharge of a firearm and aggravated battery involving serious bodily injury. During the hearing on the initial petition, the court denied release. The court noted that defendant had admitted pistol-whipping and shooting the victim, further finding that defendant's actions "occurred in a public place, over a trivial matter, surrounded by witnesses, on video [and] was so brazen and violent that it suggests no conditions would be sufficient to mitigate threat to the community." (Though the parties and the court referenced a video, the

video had not yet become available.)

¶ 12    On November 14, 2024, defendant filed a petition for release. In defendant's petition, she noted that she was a valid CCL and FOID card holder and had no criminal record or gang affiliation. She claimed that "new evidence," written witness statements, would show that:

"[defendant] was attacked and struck by one of the Venezuelan males in the opposing group which caused significant damage to her eye and broke her tooth. Furthermore, eyewitnesses would testify that [defendant] was stabbed by the female (victim) in this matter which caused scarring to her head and severe bleeding. The female then attempted to grab the purse of [defendant] which contained a firearm after the female stabbed [defendant] with a knife or other sharp object. Furthermore, independent witnesses at the scene and that are present in the video of the shooting will corroborate that the defendant was attacked and stabbed prior to the shooting."

¶ 13    Defendant also argued that there was no risk of flight, as defendant immediately cooperated with authorities and did not try to flee. "[I]n fact, she went to the police district within an hour after the shooting to explain her version of the events."

¶ 14    The court reversed its earlier decision that granted the State's detention petition. The court ordered defendant's release with conditions, including that she surrender any firearms within 48 hours, refrain from contact with the victim, and comply with "no movement" electronic monitoring. We will refer to this order as the "November release order."

¶ 15    Six months later, on May 16, 2025, the state filed a second "Petition for Pretrial Detention Hearing" based on the charge of "attempt murder." The petition alleged that the State finally "received surveillance footage of the incident that directly contradicts Defendant's theory of the case," the same theory that formed the basis of her November release. "In light of this new

evidence," the State sought to "revoke Defendant's release."

¶ 16 The trial court denied the petition but granted the People leave to file a Rule 604(h) motion for relief. See Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024).

¶ 17 So on June 5, the State filed a motion for relief from the court's November release order. The State argued that the November release order was based upon "a proffer containing unreliable information that is contradicted by the video evidence." And because the court "relied upon inaccurate information that is rebutted by video surveillance footage in granting defendant's petition and allowing her to be released from pretrial detention, the People are seeking relief and requesting that this court vacate [the release order] and reinstate [the initial] order detaining defendant."

¶ 18 The court heard argument on the State's petition for relief on June 12. At the hearing, the State published the surveillance footage of the fight to the court. After the video was played, the State argued that it rebutted the claims defendant made at the November hearing that prompted her release. For example, the State argued, "no males from the victim's group ever attacked the defendant," and while the victim certainly "was attempting to defend herself," "[t]he video does not show the victim stabbing the defendant at any point."

¶ 19 The defense did not make any argument regarding the contents of the video or whether it contradicted their previous submissions. Counsel responded only by attacking the legality of the State's petition for relief. Counsel argued, "[t]his isn't a motion or a petition for relief under 604(h), this is a motion to revoke the defendant's pretrial release." Counsel claimed that the revocation statute "is clear, the pretrial release can only be revoked if the defendant commits a new crime." In defendant's view, because the conditions for *revocation* were not present, the court had no authority to deny release, six months later, via the end-run of a motion for relief.

Second, the defense argued that the State's motion for relief was untimely, as "the State has 14 days to file their petition for relief and the notice of appeal for the Appellate Court."

¶ 20    The court granted the State's motion for relief and ordered that defendant be detained once more. In doing so, the court concluded, first, that the State had a right to bring a motion for relief, as it was "based upon incorrect information being proffered to the preliminary hearing court, wherein that court made a determination to release [defendant]." The court also found it "interesting" that, in his argument, defense counsel "did not mention the incorrect information that was proffered that directly belies the information in the video." Because the video evidence directly undercut the basis of the court's decision to grant defendant's release, the court ordered that "[defendant] is therefore being held detained in this matter."

¶ 21    On June 20, defendant filed her own motion for relief, claiming error on the same legal grounds counsel argued at the hearing. The court denied defendant's motion for relief on June 25. She appeals.

¶ 22                                   ANALYSIS

¶ 23    Defendant has not filed a supporting memorandum, choosing to stand on her motion for relief, as is her right in appeals challenging pretrial detention orders. See Ill. S. Ct. R. 604(h)(7) (eff. April 15, 2024). And regardless of whether she supplemented her motion for relief with a memorandum, she is limited on appeal to the arguments she raised in the motion for relief. *Id*. R. 604(h)(2) (issues not raised in motion for relief "are deemed waived"); *People v. Drew*, 2024 IL App (5th) 240697, ¶¶ 39-43.

¶ 24    In her motion for relief, defendant raised two arguments. First, she argued that the State's motion for relief was, in substance, a petition to revoke pretrial release. Under the revocation provisions of the PFA, the court may revoke release only if defendant is later charged with a

felony or Class A misdemeanor, which obviously was not the case here. See 725 ILCS 5/110-6(a) (West 2024); *People v. Miller*, 2025 IL App (1st) 250438, ¶ 35. Second, defendant argues that the motion for relief was untimely, as the State was required to file it within 14 days of the pretrial-detention order in question.

¶ 25    Each question is purely legal in nature, concerning interpretations of the pretrial-detention statutes and of Illinois Supreme Court Rule 604(h) (eff. April 15, 2024), which governs pretrial-detention hearings. So our review is *de novo*. *People v. Clark*, 2024 IL 130364, ¶ 15.

¶ 26    In its April 15, 2024 amendment to Rule 604(h), the supreme court, among many other things, reintroduced the concept of a "motion for relief." We say "reintroduced" because, in the decades before the PFA became effective in 2023, the motion for relief had always been an integral part of pretrial-detention law.

¶ 27    Before the PFA was enacted in 2023, a defendant who was unhappy with the circuit court's pretrial-detention order (say, the defendant was detained or believed that the monetary bond for release was too high) was required first to return to the circuit court, via a motion for relief, seeking the same relief from the circuit court that he would later, if necessary, seek from the appellate court. See Ill. S. Ct. R. 604(c) (eff. July 1, 2017); *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 2 (explaining, under pre-PFA system, that defendant was required to first file motion with circuit court seeking relief from pretrial detention order before appealing).

¶ 28    In its original amendment to Rule 604(h) after the PFA was adopted, the supreme court did not provide for a motion for relief; a party that wished to challenge a pretrial-detention order could move straight to filing an appeal. See Ill. S. Ct. R. 604(h) (eff. Sept. 18, 2023). But on April 15, 2024, the supreme court restored the motion for relief to the pretrial-detention process. The report that the supreme court adopted explained that the motion for relief

"is not new; it is a return to the norm. In virtually every other criminal appeal setting \*\*\* a motion is required in the trial court before appeal. We deviated from this norm by choosing to exempt PFA appeals from this requirement, but in retrospect we think that has proven to be a mistake." Report and Recommendations of the Illinois Supreme Court's Pretrial Release Appeals Task Force at 6.[1]

¶ 29     And so, since April 15, 2024—six months before defendant's arrest—the motion for relief has been "a prerequisite to appeal." Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024). But as the supreme court explained above in the report it adopted, it functions like motions in virtually any other context of our law, requiring that a party first bring its claims of error to the attention of the court most able to promptly correct them—the circuit court. See *People v. Patterson*, 2025 IL App (1st) 250510, ¶ 18 (motion for relief "serves many purposes," most notably that "it allows the movant to identify errors in the circuit court's detention decision and give the court the chance to correct any errors and potentially change its ruling in the movant's favor.").

¶ 30     We will jump out of order and briefly address defendant's second argument first. She claims the State only had 14 days after the November release order to file a motion for relief. That is incorrect. There is no time requirement in the rules for filing a motion for relief. *People v. Newell*, 2025 IL App (2d) 250315-U, ¶ 32. Presumably, defendant was thinking of the old version of the rules, which did not provide for motions for relief at all but did impose a 14-day deadline to appeal a pretrial-detention order. That, too, was changed in the current version of the rules. See Ill. S. Ct. R. 604(h)(3) (eff. April 15, 2024) (after disposition of motion for relief, party

---

[1] See https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/628434e3-d07f-4ead-b1f6-4470d7e83bf3/Pretrial%20Release%20Appeals%20Task%20Force%20Report_March%202024.pdf (site last visited December 17, 2025).

may appeal detention order "at any time prior to conviction"). Like appeals themselves, motions for relief have no clock on them.

¶ 31    Defendant's weightier argument is that the State's motion for relief from the November release order was really a petition to revoke pretrial release in disguise. Our analysis requires us to walk through some of the procedure here. What we will find is that there are multiple avenues to relief contained in the statutes and the supreme court rule.

¶ 32    Recall that defendant was initially detained. The circuit court is required to review that status at each subsequent hearing. 725 ILCS 5/110-6.1(i-5) (West 2024). In relevant part, "the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.*

¶ 33    At the November hearing, a month after defendant's initial detention, defendant argued that new information cast doubt on the safety threat that defendant posed. She proffered witness statements, summarized above, claiming she did not initiate the fight, that she fended off both a man and the victim, that she was stabbed by the victim. The court was persuaded and reversed its earlier decision. The court denied the petition to detain and ordered defendant's release.

¶ 34    So at that point, defendant was on pretrial release. We have seen cases where, at this stage, the State will move to revoke pretrial release. That is certainly an option for the State, but only in limited circumstances—that is, "only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release." 725 ILCS 5/110-6(a) (West 2024). We have strictly enforced that limitation. See, *e.g.*, *Miller*, 2025 IL App (1st) 250438, ¶ 35 ("pretrial release can be revoked only if the defendant is charged with a felony or Class A misdemeanor."); *People v. Hammerand*, 2024 IL App (2d) 240500, ¶ 19 (same);

*People v. Perez*, 2024 IL App (2d) 230504, ¶ 14 (same).

¶ 35    But that is not the State's *only* option. The State may file a motion for relief directed at the November release order and, if it does not prevail, appeal that order. Rule 604(h) does not specify under what circumstances a motion for relief can be filed, but it doesn't need to, because it's a prerequisite to appeal, and the rule *does* specify what orders can be appealed and by whom. Rule 604(h) provides that, among other appeals, "an appeal may be taken *** (iv) by the State from an order denying a petition to deny pretrial release." Ill. S. Ct. R. 604(h)(1) (eff. April 15, 2024).

¶ 36    If the State can appeal a release order, which it plainly may do and certainly ought to be able to do, then it obviously must be permitted to file the motion that is a prerequisite to that appeal. As it happens, in this instance, the State *prevailed* on its motion for relief, and thus an appeal was unnecessary.

¶ 37    To accept defendant's position that the State's only recourse here was to move for revocation of release—which it obviously could not do, as defendant had not committed a felony or Class A misdemeanor while on release—would be to say that the State could never appeal a release order in this context *unless* a defendant commits one of those offenses on release. It would read an entire area of appeal, explicitly authorized by Rule 604(h)(1), out of existence. That is an untenable position.

¶ 38    The fact that the State did not initially file a motion for relief, instead filing a second petition to detain based on a new charge of attempted murder that sought to "revoke" pretrial release, matters not to our analysis because the court denied that motion. We have no need to comment on the propriety of a motion, or a ruling on a motion, that is not at issue. The court told the State that it would entertain a motion for relief, which the State promptly filed. The filing of

that motion, for the reasons given above, was proper.

¶ 39    We find no error in the procedure below. As those legal arguments are the only ones raised by the motion for relief, they are the only ones we consider. We affirm the court's judgment.

¶ 40                              CONCLUSION

¶ 41    The judgment of the circuit court is affirmed.

¶ 42    Affirmed.