2025 IL App (2d) 250315-U
No. 2-25-0315
Order filed October 31, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 25-CF-492 |
| ELIJAH M. NEWELL, | ) ) | Honorable Patricia S. Fix, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court erred in granting defendant pretrial release where the court analyzed defendant's continued detention as if it was an initial detention determination, and there was no change in circumstance to warrant defendant's pretrial release.

¶ 2   The State appeals from the trial court's order granting defendant Elijah Newell's pretrial release pursuant to 725 ILCS 5/110-6.1 (West 2024) and its subsequent denial of their motion for relief under Illinois Supreme Court Rule 604(h)(4). Ill. S. Ct. R. 604(h)(4) (eff. April 15, 2024). For the reasons that follow, we vacate and remand.

¶ 3                                          I. BACKGROUND

¶ 4    On February 26, 2025, defendant was charged with the following offenses: travelling to meet a minor (720 ILCS 5/11-26(a)) (West 2024), indecent solicitation of a child (720 ILCS 5/11-6(a)) (West 2024), solicitation to meet a child (720 ILCS 5/11-6.6(a)) (West 2024); and solicitation of a sexual act (720 ILCS 5/11-14.1(a))(West 2024).

¶ 5    The State filed a petition to detain pursuant to 725 ILCS 5/110-6.1 (West 2024). The initial detention hearing was held on February 27, 2025, before Judge Nerheim. The State's petition detailed an incident in which police were conducting an undercover sex-buyer operation. An undercover agent posted an ad on an app called "skipthegames" that included photographs, sexually explicit language indicating that the agent was selling sex, and the agent's phone number.

¶ 6    On February 26, 2025, defendant texted the agent's phone number from the ad, asking if she was available and that he could come "right now." The agent and defendant discussed hourly rates, with defendant expressing his interest in meeting. The agent responded by stating, "ok im [*sic*] 16 so you gotta [*sic*] wear a condom I don't want to catch nothing" and asked if he was close to the hotel. Defendant responded "ok" and "yep im [*sic*] close."

¶ 7    The agent gave defendant her hotel room number. Shortly after, defendant arrived. Defendant entered the room and immediately attempted to touch the agent. The agent stopped him, explaining she needed the money first. The agent again stated that she was 16, so defendant would need to wear a condom. Defendant asked "18?" to which the agent clarified, for a third time, that she was 16. Defendant smiled, asked if he should sit down, and how they would do this. Defendant was then arrested by officers on standby.

¶ 8    The State presented evidence of a 2022 Cook County case where defendant was alleged to have knowingly, intentionally, and without legal justification harmed the victim in that he came from behind and grabbed both of her buttocks with his hands. The State presented further evidence

that defendant had a judgement of bond forfeiture on a DUI case, arguing this indicated his inability to follow court orders and make court appearances. The State argued that electronic home monitoring (EHM) was an ineffective mitigating condition, as the "commercial sex industry operates as both in-call and out-call" and the court would be unable to effectively monitor people coming to the defendant's house. Furthermore, the State argued there was no effective way the court could monitor the defendant's internet use.

¶ 9 Defense counsel argued defendant did not pose a risk. Defendant scored a two on his public safety assessment. There was no evidence that defendant had previously committed a similar, sexual act with a minor. The Cook County case had resulted in a non-guilty verdict by jury, therefore Defense counsel asked that the case not even be considered. Conditions such as no internet, no contact with minors, and any other recommendations by pretrial would be sufficient in mitigating any risk defendant posted to the community. Defense counsel asked for release with such conditions.

¶ 10 The trial court granted the State's petition to detain the defendant. The court made note of defendant's persistence in meeting with the agent after being informed she was 16, which was clear and convincing evidence the offense was committed. Also, defendant's persistence in having sex with an individual he believed was 16 proved defendant posed a real and present threat to the community at large. Finally, there were no conditions that could mitigate defendant's threat, as (1) he lived outside Lake County and therefore could not be monitored by EHM; and (2) the court was unable to restrict defendant's internet access.

¶ 11 On March 6, 2025, defendant filed a motion for relief pursuant to Rule 604(h)(2), arguing that the State failed to prove by clear and convincing evidence that: (1) defendant's pretrial release

would pose a threat to the victim and the community at large; and (2) no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 12    A hearing was held on March 7, 2025, before Judge Nerheim. The State argued defendant's actions and statements on February 26 made it clear he believed he was soliciting sexual acts from a 16-year-old girl, and therefore he posed a real and present threat to the safety of other minors within the community. The State also argued that sex work frequently occurs in a "clandestine" manner, and therefore the court had no adequate way to monitor defendant (either through EHM or internet monitoring) to prevent him soliciting sexual acts from a minor again.

¶ 13    The trial court denied defendant's motion and ordered continued detention, finding again that: (1) the State met their burden of proof establishing by clear and convincing evidence that the proof was evident or presumption great that defendant did commit the detainable offenses, (2) based on the evidence that after the agent told defendant numerous times she was 16 and the defendant still chose to meet with her, defendant is a real and present threat to the safety of the community; and (3) since the court lacked sufficient resources, EHM and internet monitoring were insufficient to mitigate the threat posed by defendant.

¶ 14    On March 14, 2025, Defense counsel filed an "omnibus motion concerning pre-trial detention." Defense counsel requested the court strike the State's petition to detain and to set pre-trial release conditions pursuant to under 725 ILCS 5/110-6.1 (a); or in the alternative, determine defendant's continued detention was no longer necessary under 725 ILCS 5/110-6.1(i-5). Defense counsel argued that defendant's incarceration had a significant impact on him, leaving him terrified and jobless. Defendant currently lived with his fiancée in a minor-free household. Defendant's fiancée did not work with minors. Defendant's own job did not require him to interact with minors. Defendant had "zero history of offenses" involving children, sex crimes, or other offenses

involving weapons or violence. Defense counsel argued that since the State had no evidence indicating defendant had a history of soliciting minors for sexual activities, or for searching for pornographic content involving minors, he was not an actual threat to the community. Furthermore, defendant was willing to have pre-trial services monitor his internet usage, which would satisfactorily mitigate whatever threat defendant could have posed.

¶ 15    A hearing was held on March 18, 2025, before Judge Fix. Defense counsel made his arguments and suggested that defendant be placed on "RemoteCom", a software that would monitor his internet usage. The State was unaware if Lake County pre-trial services had access to this software, so the court set the matter over to March 19, 2025. The court made a finding that the State proved by clear and convincing evidence that defendant posed a real and present threat.

¶ 16    On March 19, 2025, the detention hearing continued. The State indicated that since defendant was a resident of Cook County, pre-trial services would not be able to conduct home visits. EHM would only monitor when defendant came to and left his home. Pre-trial services also did not have "RemoteCom" or any other software to monitor defendant's internet usage. Their ability to monitor defendant's phone and any other devices with access to the internet was limited to "clicking through" whatever defendant brought in. Pre-trial services did not have access to programming that would catch if defendant had deleted anything.

¶ 17    The court noted that if defendant went to Cook County, Lake County would not be able to monitor him. In response to Defense counsel offering weekly check-ins, the court stated, "[the defendant] could have 30 computers in his home, and Lake County probation would not know about it." The court stated it could order defendant to bring in his laptop or cellphone but would have no way of knowing if he had multiple devices. Regardless of that observation, the court ultimately ordered defendant's release and denied the State's petition to detain. The court ordered

defendant comply with conditions of release that included restriction of social media and pornography, electronic device monitoring by pre-trial reporting services, a curfew, and no contact directly or indirectly with anyone under the age of 18.

¶ 18    On May 5, 2025, the State filed a motion for relief, contending that pursuant to 725 ILCS 5/110-6.1(i-5) the court erred in requiring the State to re-conduct a detention hearing after defendant had already been detained. The State argued Defense counsel failed to allege a change in circumstances applicable to (i-5), such as treatment or classes that would have changed the danger defendant posed to the community.

¶ 19    Defense counsel filed a "response in opposition to the People's motion for relief." Defense counsel argued that the State had filed its motion 47 days after the denial of detention and had forfeited its opportunity to file, referencing filing deadlines included in Illinois Supreme Court Rules 604(d), 605(a)(3), and 606(b). Defense counsel also proffered four pieces of information he argued made defendant's continued detention unnecessary:

> "(1) [The defendant'] three weeks of incarceration and the deterrent effect that would have on him in light of his limited criminal history; (2) the strictly financial nature of the judgement on bond forfeiture in re 2013 Cook Count DUI; (3) the Defense's disclosure of an entrapment defense (filed March 14); and (4) the lack of any child pornography on any of [the defendant's] devices."

¶ 20    On July 17, 2025, the trial court held a hearing and denied the State's Motion for Relief. The court reasoning was based on two findings. First, the State did not file their Motion for Relief within 30 days:

> "[E]ven if a court of review would find that there was, for whatever, a waiver of that period to exist without any term limit, which was argued; but which also belies

everything else we have done in this judicial system regarding appeals, notices, and other limitations; there is not a single process in this court system that does not have some form of a limitation."

Second, the information provided to the court on pre-trial services was sufficient: "[T]he information that the Court received at the hearing changed the calculus as to whether continued detention was necessary and whether or not he could be appropriately supervised in a less-restrictive means."

¶ 21    On July 23, 2025, the State timely filed their notice of appeal.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, the State argues that the trial court erred in that (1) it analyzed defendant's continued detention as if it were an initial detention hearing; and (2) less restrictive conditions cannot mitigate the risk posed by defendant.

¶ 24    Where parties to a pretrial detention hearing proceed solely by proffer, a reviewing court is not bound by the trial court's findings, and our review is *de novo*. *People v. Morgan*, 2020 IL 130626, ¶ 51. Although here, our review is not of the initial pretrial detention hearing, rather a continued-detention determination, *Morgan*'s reasoning still applies. See *People v. Thomas*, 2025 IL App (1st) 250251-U (¶ 23). Accordingly, as the parties here proceeded solely by proffer, and we as the reviewing court stand in the same position as the trial court, our review is *de novo*. In other words, we may "conduct [our] own independent review of the proffered evidence and evidence otherwise documentary in nature." *Id*. The purpose of this independent review is to determine whether the evidence identified in the parties' proffers is sufficient to meet the statutory factors set forth in 725 ILCS 5/110-6.1 (West 2024), or in this case, 725 ILCS 5/110-6.1(i-5) (West 2024).

¶ 25   As mentioned above, this appeal involves a continued-detention determination under 725 ILCS 5/110-6.1(i-5) (West 2024). At each subsequent appearance of the defendant, the court "must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1 (i-5)(West 2024).

¶ 26   Rather than asking whether pretrial conditions can mitigate the threat posed by the defendant, subsection (i-5) starts from the premise that the defendant's detention *was* necessary to guard against a threat and asks whether anything has changed so that detention is no longer warranted. *People v. Thomas*, 2025 IL App (1st) 250251-U, ¶ 22; *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. Therefore, while the State is not required to repeatedly prove by clear and convincing evidence the three propositions required at the initial pre-trial detention hearing, the State is required to provide a factual basis for the defendant's continued detention. *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13.

¶ 27   At a continued detention hearing, the court's task is to determine whether new information has been presented that undermines the original conclusion that the defendant's detention was necessary to prevent a real and present threat. *Thomas*, 2025 IL App (1st) 250251-U, ¶ 25. Therefore, the question we must ask is whether new information was presented such that the initial detention is no longer necessary. *Thomas*, 2025 IL App (1st) 250251-U, ¶ 26.

¶ 28   Turning now to the State's first argument—that the trial court erred in analyzing defendant's continued detention as if it were an initial detention hearing. We review this argument first.

¶ 29   After the initial detention hearing, defense counsel filed an omnibus motion which, among other things, requested the court to determine that defendant's continued detention was no longer

necessary under subsection (i-5). *Supra* ¶ 14. In his motion, defense counsel presented the following evidence: defendant's personal state during his incarceration; defendant's lack of contact with minors at his home and job; and defendant's lack of criminal history involving sexual conduct with minors. *Supra* ¶ 14. Defense counsel invoked the correct portion of the statute in his motion, but ultimately failed to proffer evidence in either the motion or at the hearing to support that there had been a sufficient change in circumstances so that defendant would no longer present a threat. These factors would make a compelling argument as to why the State failed to meet its burden for a hearing reviewing pre-trial detention under 725 ILCS 5/110-6.1(e)(1)-(3), but that was not the standard at issue here.

¶ 30    Later in his response to the State's Motion for Relief, defense counsel proffered four pieces of information he believed satisfied the question of whether defendant's continued detention had been necessary. *Supra* ¶ 18. Again, this evidence does not provide new information on a change in circumstance that would have mitigated the danger defendant posed to minors within the community. Additionally, as the trial court treated the hearing as an initial detention hearing, it never considered whether new information had been presented that undermined the original conclusion that the defendant's detention was necessary to prevent a real and present threat. Therefore, we find that the trial court did err in treating the continued-detention determination as an initial hearing. As the trial court did not apply the proper standard, we vacate and remand for a new continued-detention determination hearing.

¶ 31    The State's second argument was raised in the alternative in the event we determined the trial court did not err in applying the standard for initial pretrial detention rather than the standard for continued detention determination. As we determined the trial court did err, we need not address the State's second argument.

¶ 32    To close, we will briefly address the issue of the State's timeliness in filing their motion for relief with the trial court. Although the State has not included this in their memorandum, we find this nevertheless important to address. In denying the State's motion for relief, the trial court appeared to enforce a 30-day deadline for a party to file their motion for relief. *Supra* ¶ 20. No such deadline exists. The plain language of Illinois Supreme Court Rule 604(h) does not include a deadline in which a party must file a motion for relief. Ill. Sup. Ct. R. 604(h) (eff. Apr. 15, 2024). When construing a rule of the supreme court, our primary goal is to ascertain and give effect to the intent of the drafters. *People v. Cooksey*, 2024 IL App (1st) 240932, ¶ 14 (citing *Ferris, Thompson & Zweig, Ltd. V. Esposito*, 2017 IL 121297, ¶ 22). "[W]e will not depart from the plain language of the rule by reading into it exceptions, limitation, or conditions." *Id.* As the plain language of Illinois Supreme Court Rule 604(h) does not impose a 30-day deadline for a party to file their motion for relief, it was improper for the trial court to do so in ruling on the State's motion for relief.

¶ 33                                III. CONCLUSION

¶ 34    For the reasons stated, we vacate the judgment of the circuit court of Lake County, and remand for further proceedings consistent with this decision.

¶ 35    Vacated and remanded.