2026 IL App (2d) 250480-U
No. 2-25-0480
Order filed January 16, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-247 |
| ANTONIO M. ERVIN, | ) ) ) | Honorable Jody P. Gleason, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Circuit court's denial of motion for relief affirmed, where defendant did not establish a change of circumstances justifying release with conditions.

¶ 2    In 2024, defendant, Antonio M. Ervin, was denied pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652 (eff. Jan. 1, 2023)). Defendant appealed, and this court affirmed. *People v. Ervin*, 2024 IL App (2d) 240489-U.

¶ 3    Our mandate issued on October 23, 2024. Thereafter, on June 10, 2025, defendant moved for relief, asking the circuit court to reconsider his detention. Following a hearing, the court denied the motion. Defendant appeals, and we again affirm.

¶ 4                                I. BACKGROUND

¶ 5                        A. Petition to Detain and First Appeal

¶ 6    As they remain relevant to the circuit court's order at issue in this appeal, we recite the underlying facts as summarized in our previous decision. *Id.* ¶¶ 4-13.

¶ 7    Namely, on August 7, 2024, the State charged defendant by information with unlawful possession of a controlled substance with intent to deliver 100 grams or more but less than 400 grams of cocaine (720 ILCS 570/401(a)(2)(B) (West 2022) (Class X)), unlawful possession of a controlled substance (*id.* § 570/402(a)(2)(B) (Class 1)), unlawful possession of a weapon by a felon (*id.* § 5/24.1-1(a) (Class 3)), and possession of a firearm without a Firearm Owner's Identification Card (430 ILCS 65/2(a)(1), 14(c)(3) (West 2022) (Class 3)). On August 8, 2024, the State petitioned to deny defendant pretrial release, arguing that defendant was charged with a felony and his pretrial release posed a real and present threat to the safety of any person or the community. 725 ILCS 5/110-6.1(a)(1), (6) (West 2022). Also, the State referenced defendant's criminal history and that defendant had pending charges in Kane County (case No. 24-CF-1150) for unlawful possession of a controlled substance and driving under the influence (DUI) and scored an 8 (out of 14) on a risk assessment instrument. The State also argued that defendant posed a risk of not appearing in court.

¶ 8    The State attached to its petition the police synopsis, which related as follows. On August 7, 2024, at about 7:37 p.m., an Aurora police special operations group executed a search warrant at the residence at 2930 Heather Lane in Montgomery. (Defendant had been arrested prior to

execution of the warrant during a traffic stop after leaving the residence.) During the search of the residence, police found in a cupboard of a basement bar three bags containing 320.2 grams of a substance that field-tested positive for cocaine. The street value of the suspected cocaine was $32,000. Also found in the cupboard were two boxes of plastic sandwich bags (one of which was opened), two working digital scales (one of which had white residue that field-tested positive for cocaine), and a glass measuring cup and a plastic cup (both with white residue that field-tested positive for cocaine). A sign on top of the bar read "Antonio's Bar." In a room adjacent to the basement bar area, police found an Olympic Arms MFR rifle and a Magpul PMag 30 magazine with five 5.56 millimeter rounds of ammunition. In the upstairs master bedroom closet, police found a FN Five-Seven 5.7x28 millimeter handgun and a Pro Mag magazine with 33 rounds of 5.7x28 millimeter ammunition. Police collected $6,272 in United States currency from a box in the upstairs master bedroom closet, along with a traffic citation written to defendant at the residence and tax documentation for him. On the kitchen counter, police found a Village of Montgomery utility bill addressed to defendant at the residence.

¶ 9 Vito McIntee, defendant's father, arrived during the search and agreed to speak to police. He lives with defendant at the residence in the basement bedroom. McIntee never observed firearms or drugs, besides cannabis, in the house. Nor did he know defendant to have any firearms or drugs. McIntee stated that defendant had been to prison for drugs in the past but thought he was done dealing drugs.

¶ 10 The State also attached as an exhibit to its petition a pretrial services investigation report. It related that defendant is not married and has a one-year-old child who resides with him at the residence. He does not have family living in the Kendall County area. He will drive himself to future court dates, and records reflected that he had a valid driver's license. Defendant reported

that he was employed with AME Trucking LLC, and his annual income is $100,000. Defendant had a pending case in Kane County for possession of a controlled substance (other drug-any amount), DUI (alcohol), and DUI (blood alcohol content .08 or more).

¶ 11    Defendant's criminal history includes, among others, convictions for: manufacture/deliver controlled substance-cocaine (2015; 10 years' imprisonment); three drug-possession offenses (2010, 2009, and 2007; 30 months', 72 months', and 24 months' imprisonment); and aggravated battery/harm/peace officer (two in 2008; 3 years' imprisonment each). A pretrial risk assessment identified defendant's level of risk of pretrial misconduct as moderate. The pretrial report also noted that, based on a review of defendant's criminal history, defendant missed at least one previous court date where a warrant was issued. Pretrial services recommended that defendant be released with pretrial supervision and that the court consider ordering that defendant be placed on GPS monitoring.

¶ 12    Also included as exhibits to the State's petition were photographs of the items in the basement bar cupboard, the FN Five-Seven handgun, and the currency, along with a copy of the search warrant. The warrant complaint and affidavit related that, in May 2024, police learned from a confidential informant that defendant was selling cocaine. The informant made three controlled purchases of cocaine from defendant. The informant met defendant in a parking lot and entered a black GMC Sierra (which defendant had driven from his residence) to purchase the cocaine, after which the Sierra was driven to defendant's residence and defendant exited the vehicle and entered the residence.

¶ 13    On August 9, 2024, the circuit court granted the State's petition. The court noted that, based on the police synopsis, pretrial services report, search warrant, and photographs, the State had proved by clear and convincing evidence that the proof was evident and presumption great

that defendant committed a detainable offense. It also found that defendant posed a real and present threat to the community, based on evidence that: he was in possession of drugs, ammunition, and firearms; was selling drugs; committed a felony while on release from Kane County; and sold cocaine to a confidential informant three times prior to his arrest. The court also noted that defendant was not allowed to have guns in his home. Finally, the court found that less restrictive conditions would not ensure the safety of the community and defendant's appearance in court. It noted that defendant was on release from Kane County when he allegedly committed the present offenses, and he has a history of drug possession or manufacturing and delivering a controlled substance. Release "does not appear to prevent him from doing the same behavior." He was also allegedly selling/packaging cocaine from his residence. No conditions could prevent his behavior. The court also determined that GPS monitoring, which would only inform police if defendant was in his home, would not prevent any illegal activity within the home; the three controlled buys, as noted in the search warrant application, occurred after defendant left his house to travel to the location where the buys took place. It also noted that the courts do not have the resources to monitor defendant "24/7."

¶ 14    On August 16, 2024, defendant filed a motion for relief. Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024). Addressing the evidence concerning the cocaine, defendant noted that it stemmed from controlled buys by a confidential informant and the discovery of cocaine in his residence pursuant to the search warrant. The cocaine seized from his residence was in a common area of the property where he resides with an additional adult, he asserted. Further, the weapons, which were found in the house during the search, included one that was seized from a common area. Next, addressing his employment, defendant noted that he is responsible for the daily business operations of his company (he is the principal owner), including billing and payroll matters, and can engage in those

activities from his home. He is responsible for four employees, as well as subcontractors, who depend on him for their livelihoods. Defendant also noted that he is responsible for the financial needs of his 14-month-old child, with whom he shares physical custody with the child's mother. The two parties co-parent by equally dividing parenting time.

¶ 15    Next, addressing conditions that could mitigate the risk that his pretrial release would pose, defendant sought "house arrest," specifically GPS monitoring with movement allowed only for purposes of attending court appearances, meeting with his attorneys, and meeting with pretrial services. Defendant noted that he has an in-house security system that includes video surveillance of the property (cameras covering the back yard and front of the garage, plus a doorbell camera), and he noted that he would give police unrestricted access to such surveillance, were he to be placed on home confinement. He also noted that he was willing to add additional surveillance equipment if he was allowed to return to his property. Defendant contended that he would allow police to access his property to conduct a search to ensure no contraband was in the home at that time and directly prior to his return to the residence. He argued that the foregoing measures would alleviate any concerns of ongoing criminal enterprise by him at his property.

¶ 16    On August 19, 2024, the circuit court denied defendant's motion. Granting police access to search defendant's house or to review security videos, the court found, would not prevent defendant from selling drugs from the residence. The sheriff's office, it noted, did not have the resources to constantly monitor defendant. Addressing defendant's child, the court found that residing in defendant's home was dangerous for the child, as the cocaine located in the home was not secured in a safe, for example, and the weapon found in the master bedroom closet (with a magazine with 33 rounds of ammunition) was not in a locked safe. Defendant could have someone else run his trucking business, the court suggested. The court determined that there was no

combination of conditions that could alleviate the necessity to detain defendant.

¶ 17     As noted, this court (applying a bifurcated standard of review) affirmed the detention, determining first that the trial court reasonably found from the police synopsis, search warrant, and pretrial services report that the weapons, drugs, and related paraphernalia belonged to defendant and, thus, that the proof was evident and presumption great that he committed a detainable offense. *Ervin*, 2024 IL App (2d) 240489-U, ¶ 19.  Further, we concluded that the court did not err in finding that no condition or combination thereof could mitigate the risk that defendant's pretrial release would pose and reasonably found that courts and police lack resources to constantly monitor a defendant who is on GPS monitoring for conducting drug-related activities from home.  *Id.* ¶ 20.  In addition, we noted that defendant was on pretrial release for unlawful possession of a controlled substance and DUI when charged in this case, had a history of drug-related convictions, and the newly alleged activities concerned the possession and sale of cocaine and illegal possession of firearms, reflecting defendant's disregard for court orders.  *Id.*

¶ 18                              B. Motion for Relief and Instant Appeal

¶ 19     On June 10, 2025, defendant filed a new motion for relief (Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024)), asking the circuit court to reconsider his detention.  Defendant again argued that the evidence was insufficient to prove by clear and convincing evidence that the proof was evident or presumption great that he committed the charged offenses.  He noted that the court had relied on the police synopsis, pretrial services investigation report, and his criminal history, but the probable cause required for the police report was lower than the clear-and-convincing standard required for detention and, further, that he is presumed innocent of all charges.

¶ 20     In addition, defendant argued that the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety of any person or the community.

Specifically, he argued that there was no evidence that the firearm found in the master bedroom was his or that he ever used it. Further, he noted that his father resided downstairs and arguably adjacent to the rifle, which was not hidden, as well as the cocaine, which did not have cut corners on the plastic baggies to suggest packaging of cocaine for delivery to another. Also, defendant argued that the only evidence tying him to the cocaine was his residence in the home; no evidence demonstrated that the type of the cocaine found in the home was the same type allegedly delivered to the confidential informant; and there was no evidence that either the rifle or firearm were in places over which defendant had exclusive control. Defendant argued that, despite the court's findings to the contrary, he was not in actual possession of any drugs, firearms, or ammunition, nor were any found in an area over which he had actual and exclusive control. Defendant claimed, "A firearm in a closet far from one's arm reach does not make him personally armed with a firearm at anytime [*sic*] unless he is within arm's reach of the closet" and, although the court found he was not allowed to have guns in the home, he was not aware of any restrictions reflecting that other residents in the home could not possess firearms, likening the situation to when someone was paroled to a home. Defendant asserted that he had not been seen with either firearm, and there was no evidence they were his or used by him. Defendant noted that, although the court found he was selling drugs, he was not charged with selling drugs, and the only evidence in that regard came from uncorroborated hearsay evidence from the confidential informant contained in the search warrant. Defendant also contended that, although the court found he committed a felony while on pretrial release, he neither pleaded guilty nor had been found guilty of committing any crime while on pretrial release and was presumed innocent.

¶ 21 Next, defendant argued that the State failed to prove by clear and convincing evidence that no condition or combination of conditions would mitigate the risk he posed if he were released.

He noted that he could be placed on GPS and EHM, with conditions that he not leave the house except for specific, pre-approved movements. He conceded that courts do not have the resources to monitor him "24/7," but implored that his "offer of giving them full access to the home's surveillance cameras goes above and beyond any potential for criminal conduct." Defendant noted that the court could limit his visitors and view his cameras as needed and without his knowledge. Defendant also attached evidence of his income through his trucking business, as well as his child's medical needs. With respect to the business, although the court previously found that someone else could run it, defendant argued that this approach had failed. Although the gross income for the company in 2023 was $685,124, defendant claimed that, in his absence, financial institutions would not deal with his assigned agents, wages were unpaid, his equipment was subject to forfeiture and seizure in legal proceedings, and he had been unable to pay the mortgage on his home since March 2025. Defendant argued that his 2023 business income, as well as his home ownership, should alleviate any concerns of flight risk. Defendant summarized that the court erred in granting the State's petition to detain and that restrictions short of detention were appropriate.

¶ 22 On June 23, 2025, the court held a hearing on defendant's motion. Defendant proffered an email letter from the mother of his child, representing that the child suffers from severe asthma that requires frequent medical attention and the critical medical appointments and constant care were "incredibly difficult" for her to balance alone along with her job. She noted that urgent care visits and asthma attacks can arise unexpectedly, forcing her to miss work or rearrange her schedule with little notice, which puts a strain on her employment and affects household stability. When defendant was not incarcerated, he worked with her to support their child, but now she has had to assume full responsibility for all parenting duties and financial obligations, and his absence

requires her to cover medical expenses, daily living expenses, and transportation to and from appointments alone and on a single income, which has significantly increased their hardship.

¶ 23    Defendant next introduced an email from his mother, explaining that she had tried unsuccessfully to obtain power of attorney over defendant's bank account, as the bank found problems with the paperwork. The bank also will not allow her access to his business accounts, claiming that it needed to speak to defendant directly. Further, she wrote that defendant's house was in the beginning stages of foreclosure and, although the bank said it can be saved, she needs defendant's help and cannot afford it on her own.

¶ 24    Finally, defendant introduced a group exhibit containing some of his child's medical records, as well as financial statements, including tax returns and, specifically, the 2023 business tax return that was a substantial basis for his argument.

¶ 25    In argument, defense counsel noted that the pretrial services report recommended defendant's release on GPS monitoring or EHM. Further, counsel noted that, although the court had originally surmised that someone else could run defendant's business while he was detained, his mother's letter reflected that was not the case. He argued that defendant's 2023 tax return and 2022 bank records also reflected that he is far from a flight risk, as he earned a substantial income running a business, has paid taxes, has a home with a mortgage, and has a child that needs him.

¶ 26    In addition, counsel argued the State must present specific evidence of dangerousness aside from the recitation of charges. Here, he continued, the weapons were not defaced or stolen, and there was no evidence of who owned them; thus, defendant should not be "punished because law enforcement didn't do anything to track down that owner." Further, defendant does not live alone, the cocaine was not in a place where it would be in defendant's exclusive possession, and, even though the drug charges were Class X, release remained presumed under the Code. Counsel asked

the court to reconsider defendant's detention or, alternatively, to allow him a 90-day release period to sell his business, shore up his accounts, complete the financial paperwork, and provide for his family. "Judge, he is losing everything."

¶ 27 The State corrected defense counsel's representation and clarified that pretrial services did not recommend defendant's release but, rather, recommended that *if* defendant were released, he should be released with pretrial supervision and, possibly, on GPS. The State next refuted defendant's implication that the evidence was insufficient to establish he committed the charged offenses, noting that the drugs were found in a home owned by him with plenty of indicia of occupancy, including his tax documents, which were found in the master bedroom, and the cocaine was found in an area with the sign "Antonio's Bar." The synopsis also reflected that the other person living in the home said he had no knowledge of the firearms or drugs.

¶ 28 As to dangerousness, the State noted that it adopted its same arguments "as before," but added that defendant had previously been in prison for 10 years for selling drugs to the community, engaged in drug deals and was now in possession of over 300 grams of cocaine with multiple scales and equipment that tested positive for residue, and there were firearms found in relative vicinity to those drugs. "That is clearly a danger to the community, and I think, even noted by the court, not an environment that a child should be in. Those guns weren't locked away and that cocaine was also, I don't believe, locked away." The State noted that the crux of defendant's argument seemed to be that he needed to work, but "everybody needs to work. That's not a reason to release somebody and let them be a danger to society." Further, the State noted, it appeared that when defendant was working, he was selling drugs or in possession of a large volume of drugs. Finally, although defendant raised arguments concerning his child's health and well-being, it was

not safe for a child to be in a home with unlocked drugs, firearms, and ammunition. The court should not, the State argued, determine that defendant is not a danger because his child has asthma.

¶ 29 The court denied defendant's motion. It recited the facts and evidence upon which it had previously relied when it rendered its initial detention decision. In part, it noted, it had found that defendant was a danger to the community at large because the sale of drugs was happening either directly from the home or by taking the drugs out into the community. Further, it noted that indicia of ownership and possession included a traffic citation and tax documentation belonging to defendant in the upstairs master bedroom closet where over $6,000 in cash was found in a box, as well as a handgun and 33 rounds of ammunition. Moreover, the court reiterated that it took note of the fact that defendant was on pretrial release at the time the search warrant was executed, as well as the fact that defendant's child would have been present in a home with guns, ammunition, and drugs.

¶ 30 In addition, with respect to new evidence and argument, it found that, while caring for a child alone is a hardship for anyone, the submitted medical records reflected that only two more medical appointments were scheduled and they were at the same time. Regarding the financial records, it explained that the tax returns and bank records did not clearly reflect that defendant made a large profit or had a positive account balance and, thus, they were not particularly helpful. But in any event, the court noted, it was previously aware that defendant ran a business when it ordered him detained. Moreover, although defendant's mother had submitted a letter reflecting that she could not get power of attorney to run the business on defendant's behalf, defendant "certainly" could have an attorney come in and draft up a power of attorney for him.

¶ 31 On October 22, 2025, defendant filed a notice of appeal. The Office of the State Appellate Defender declined to file a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff.

April 15, 2024).  The State has submitted a memorandum opposing defendant's appeal.

¶ 32                                II. ANALYSIS

¶ 33    Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may be denied only in certain statutorily limited situations.  725 ILCS 5/110-2(a), 110-6.1(e) (West 2022).  When petitioning the court to deny pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(2)), and that no condition or combination of conditions can mitigate that risk (*id.* § 110-6.1(e)(3)).

¶ 34    After the court orders pretrial detention, section 110-6.1(i-5) of the Code provides only that,

> "[a]t each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5).

¶ 35    Therefore, and as we recently noted in *People v. Triplett*, 2025 IL App (2d) 250246-U, ¶ 21, while a court ordering continued detention must again make certain findings based on specific, articulable facts (see *People v. Harris*, 2024 IL App (2d) 240070, ¶ 37), subsequent detention determinations are *not* subject to every statutory requirement that applies to initial detention hearings (*People v. Casey*, 2024 IL App (3d) 230568, ¶ 13 ("the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing")).  Accordingly, we presently review only

the court's determination that continued detention is necessary, not the initial detention decision. *Id.* ¶ 22.

¶ 36 We further note that courts have applied different standards of review to continued detention decisions. *Id.* Here, defendant's motion for relief attacked the three elements applicable to the initial detention decision, and no live testimony was presented at the hearing on his motion for relief, suggesting *de novo* review is appropriate. See *People v. Morgan*, 2025 IL 130626, ¶ 54; *People v. Newell*, 2025 IL App (2d) 250315-U, ¶ 24. The State, however, asserts that a determination of continued detention is reviewed for an abuse of discretion, citing for support *People v. Post*, 2025 IL App (4th) 250598, ¶ 29, which is now before our supreme court. See *People v. Post*, No. 132403, 2025 WL 3296376 (Ill. Nov. 21, 2025). Ultimately, we need not resolve which standard of review is appropriate, as the court's decision to continue defendant's detention was not erroneous under either standard.

¶ 37 Specifically, defendant's motion for relief primarily raised the same overarching arguments he raised when challenging his initial detention. As such, defendant failed to address the present framework, which requires the court to consider whether any *changed circumstances* obviate the need for detention. See, *e.g.*, *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14; *Newell*, 2025 IL App (2d) 250315-U, ¶¶ 26-27. The closest defendant came to arguing a change in circumstances were his assertions that (1) although the court previously believed someone else could run his business while he was detained, that had not proved successful; and (2) his detention had placed undue burden on his child's mother, given the child's health struggles. However, the court did not err in determining that the burdens of single parenting and the challenge of trying to legally operate defendant's business in his stead were not exactly "changed circumstances," as the court knew, generally, about these conditions prior to the initial detention decision.

¶ 38 Nevertheless, even if defendant's financial and medical documentation *could* be viewed as reflecting changes or new information, the court did not err in determining that they did not warrant alteration of the detention decision. More specifically, the information did not reflect that release with conditions would now be adequate to mitigate any threat of danger. Again, the court's dangerousness finding was premised, in part, on the fact that the alleged activities involved large quantities of cocaine, the sale of cocaine, and defendant's illegal possession of firearms. When defendant was charged in this case, he had pending charges in Kane County for unlawful possession of a controlled substance and DUI (and was on pretrial release for such). We previously agreed that these facts, coupled with defendant's history of drug-related convictions, reasonably reflected defendant's disregard for court orders, such that no condition or combination thereof, including GPS monitoring, would mitigate the threat defendant posed to community safety. *Ervin*, 2024 IL App (2d) 240489-U, ¶ 20. As such, defendant's presentation of financial documents concerning his business, and his evidence concerning the burden his detention places upon his child's mother, in light of the child's health struggles, simply did not serve to render defendant more likely to comply with court orders or in any other manner affect the nature of the danger presented. In short, defendant's motion for relief was insufficient to show a change in circumstances warranting release with conditions, and there is no basis to disturb the court's determination that defendant's continued detention was necessary to protect others.

¶ 39                                III. CONCLUSION

¶ 40 For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 41 Affirmed.